# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

DOROTHY HOBSON, as personal ) 
representative and administrator for the ) 
Estate of Kenneth Hobson, ) 
                                    ) 
        Plaintiff, ) 
                                    ) 
        v. )        CAUSE NO.: 2:10-CV-429-TLS 
                                    ) 
ROY DOMINGUEZ, individually and in ) 
his official capacity as sheriff of Lake ) 
County, Indiana, *et al.*, ) 
                                    ) 
        Defendants. ) 

## OPINION AND ORDER

This matter is before the Court on two filings. On October 28, 2011, the Court granted

the Plaintiff Dorothy Hobson's request to file a Second Amended Complaint. (*See* Order, ECF

No. 67.) The Plaintiff filed her Second Amended Complaint [ECF No. 68] on October 28, 2011.

The Court had previously granted a motion to dismiss filed by Defendant William Pierce, M.D.

(*see* Opinion & Order, ECF No. 55), but that dismissal was without prejudice (*see* Order, ECF

No. 57). The Second Amended Complaint included supplemental allegations against Defendant

Pierce. Therefore, on January 5, 2012, Defendant Pierce filed a Motion to Dismiss [ECF No.

107] along with a Brief in Support [ECF No. 108]. The Plaintiff filed a Response [ECF No. 111]

on January 19, and Defendant Pierce filed a Reply [ECF No. 112] on January 30. Additionally,

Defendants Edgewater Systems for Balanced Living, Dr. Kovilparambil Anthony, Dr. Mario

Robbins, Michelle Harris, and Patti Kerr (the Edgewater Defendants) filed a Motion for Partial

Summary Judgment on Plaintiff's State Law Claims [ECF No. 109] on January 17, along with a

Memorandum in Support [ECF No. 110]. The Plaintiff filed a Response [ECF No. 121] on

February 14, and the Edgewater Defendants filed a Reply [ECF No. 123] on February 27.


## FACTUAL BACKGROUND

On October 17, 2009, Kenneth Hobson was arrested, charged with misdemeanor disorderly conduct and resisting arrest, and taken to the Lake County Jail, where he was held for sixteen days. Mr. Hobson had various mental and physical health issues. According to the Plaintiff, he suffered from a fear of authority figures and a fear of drinking non-bottled water. The former led to his refusal to sign booking paperwork and concomitant incarceration. The latter led to his refusal to drink water while incarcerated. On November 2, 2009, an officer found Mr. Hobson dead in his jail cell. Apparently, Mr. Hobson died of dehydration, and he had been dead for hours when his body was found. His mother, the Plaintiff, as personal representative and administrator for Mr. Hobson's estate, instituted this action against the sheriff of Lake County, Indiana, the former warden of the Lake County Jail, and more than a dozen other Defendants.


## PROCEDURAL BACKGROUND

In the Plaintiff's Second Amended Complaint [ECF No. 68], she named the following Defendants: Roy Dominguez, individually and in his official capacity as sheriff of Lake County, Indiana; Bennie Freeman, individually and in his official capacity as former warden of the Lake County Jail; Christopher McQuillin, individually and in his official capacity as director of the jail's medical operations; jail deputy warden Jennifer Malanshek; jail deputy warden Craig

Ponton; jail lieutenant Yvonne Haley; jail sergeant Joi McDaniel; jail officers Cathy Krieg,

Daryl Brown, Jerron Biddings, Terry Caverly, Camille Clark, Mark Collins, Georgette Gonzalez,

Rita Key, William Lumsdon, Renita Merriweather, David Murchek, Ashley Powell, Donita

Smith, and Deborah Stack; Manuel Barragan; Denise Gross; Dr. Mario Robbins; Dr. William

Pierce; Dr. Kovilparambil Anthony; Patti Kerr; Daryl Frey; Michelle Harris; Med-Staff, Inc.;

Edgewater Systems for Balanced Living; John Buncich, in his official capacity as sheriff of Lake

County Jail; and unknown employees and supervisors of Lake County Jail, Med-Staff, Inc., and

Edgewater Systems for Balanced Living.

The Seconded Amended Complaint sets forth ten counts.[1] In the following counts, the

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983: Count I, against all Defendants, alleging

violations of the Fourth Amendment to the United States Constitution by actions and omissions

that were objectively unreasonable; Count II, against Defendants Dominguez, Freeman, and

McQuillin, alleging violations of constitutional rights by subjecting the Plaintiff to grossly

inhumane and dangerous conditions of confinement; Count III, against all Defendants, alleging

violations of constitutional rights by deliberate indifference to Mr. Hobson's serious risk of

physical harm and death in the Jail; Count IV, against the Defendants who were employees of

the Jail, alleging excessive and unlawful detention. In the following counts, the Plaintiff asserts

---

[1]Defendant Pierce suggests that references in the allegations to "the Defendants" are unclear and vague to a degree meriting dismissal. *See Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) ("Vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with respect to those defendants."). The Court has previously noted that the Plaintiff's allegations "sweep very broadly." (Opinion & Order 4 n.2, ECF No. 55.) Nevertheless, the Court is satisfied that the allegations in the Second Amended Complaint adequately specify which Defendants are implicated.

claims under state law: Count V, against all Defendants, alleging wrongful death; Count VI,

against all Defendants, asserting a survival action; Count VII, against the Defendants who were

employees of the Jail, alleging false imprisonment; Count VIII, against all Defendants, alleging

negligence; Count IX, against all Defendants,[2] alleging intentional infliction of emotional

distress; and Count X, against the Defendants which are governmental entities under Indiana

Code § 34-13-4-1 and the public employees of such entities, asserting indemnification. The

Second Amended Complaint alleges that Defendant Edgewater Systems for Balanced Living is

"an independent contractor retained by Lake County at the time of Mr. Hobson's death to

provide mental health evaluation, care and treatment to all Jail detainees." (Second Am. Compl.

¶ 40, ECF No. 68.) It further alleges that "Defendants Dr. William Pierce, Dr. Kovilparambil

Anthony, and Dr. Mario Robbins were contracted to work as physicians at the Jail, and to

monitor and treat the physical and/or mental conditions of the Jail's detainees, during relevant

times . . . [T]hese Defendants were responsible for evaluating and treating Kenneth Hobson

while he was detained in the Jail." (*Id.* ¶ 41.) Defendants Kerr and Harris are described as "Lake

County Jail contract staff." (*Id.* ¶ 43.) The Second Amended Complaint additionally alleges that

Defendants Pierce, Anthony, Robbins, Kerr, and Harris "had the responsibility for evaluating,

monitoring and treating Mr. Hobson while he was detained at the Jail." (*Id.* ¶ 17.)

On June 30, 2011, the Court granted Defendant Pierce's first Motion to Dismiss because

the Plaintiff had failed to plead facts showing Defendant Pierce's personal involvement with

---

[2]Defendant Pierce points out that portions of Count IX name only the Defendants who were employees of the Jail. (Second Am. Compl. ¶ 97.) But the Court finds that the substance of Count IX applies to all Defendants. (*Id.* ¶ 99.)

depriving the Plaintiff of any constitutional rights under federal law, and because the Plaintiff

agreed she was not pursuing state law claims against Defendant Pierce. (Opinion & Order 4–5,

ECF No. 55.) The Court stated that the pleadings "fail[ed] to provide a factual basis alleging that

Dr. Pierce personally acted with deliberate indifference or was otherwise personally involved in

any way with the care of Mr. Hobson." (*Id.* 5.) Because the Plaintiff had "fail[ed] to plead facts

suggesting that a right to relief [wa]s anything more than speculative" (*id.* 6), the Court granted

the Motion to Dismiss the claims against Defendant Pierce without prejudice (*see* Order, ECF

No. 57).

The Second Amended Complaint contains specific allegations against Defendant Pierce

and the Edgewater Defendants. It states that Defendant Robbins, "one of the people responsible

for looking after Mr. Hobson[,] . . . discovered that Mr. Hobson was not communicating with

staff . . . [but] did nothing." (Second Am. Compl. ¶ 19.) It further states that Mr. Hobson's

family "directly warned" Defendant Kerr and Defendant Pierce. (*Id.* ¶ 12.) Finally, it adds the

following specific allegations against Defendant Pierce:

> As to Dr. William Pierce, Jail staff connected Plaintiff by phone with Dr. Pierce
> approximately two days afer Kenneth Hobson arrived at the Jail. During that phone
> conversation, Ms. Hobson explained in detail to Dr. Pierce that her son would not
> drink water that was not bottled. She explained to him that as a result, the one
> previous time that her son had been in jail, a court had seen fit to order the jail to
> provide bottled water to Mr. Hobson. Ms. Hobson told Dr. Pierce that she feared that
> her son would die in the Jail if not treated appropriately. Dr. Pierce assured Ms.
> Hobson that he had seen her son, and that he was okay, although he was alone in a
> cell and did not want to talk to anyone.

(*Id.* ¶ 13.)

The Motion to Dismiss [ECF No. 107] filed by Defendant Pierce and the Motion for

Partial Summary Judgment [ECF No. 109] filed by the Edgewater Defendants are both fully

briefed and ripe for ruling.

## STANDARD OF REVIEW

Because the motions before the Court involve both Rule 12 and Rule 56, the Court will

discuss both standards.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510,

1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in

the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn

from the allegations. *Whirlpool Fin. Corp.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations

that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his
> "entitlement to relief" requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations must
> be enough to raise a right to relief above the speculative level, on the assumption that
> all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and

footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is

plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at

556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012) (stating that a court need not accept as true "legal conclusions or conclusionary allegations that merely recite a claim's elements"). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Iqbal*, 556 U.S. at 680; *see also Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). Finally, determining whether a complaint states a plausible claim for relief requires a reviewing court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Under Rule 56, summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477

U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party

seeking summary judgment bears the initial burden of proving there is no genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a)

(stating that the movant must provide a "Statement of Material Facts" that identifies the facts

that the moving party contends are not genuinely disputed). In response, the nonmoving party

cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to

designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S.

at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56-1(b)

(directing that a  response in opposition to a motion for summary judgment must include "a

section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party

contends are genuinely disputed so as to make a trial necessary"). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by:
> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations, stipulations
> (including those made for purposes of the motion only), admissions, interrogatory
> answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual

dispute, the court must construe all facts in a light most favorable to the nonmoving party, view

all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp*., 200 F.3d 485,

491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is

more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

## DISCUSSION

### A.      Defendant Pierce's Motion to Dismiss

Defendant Pierce moves to dismiss all counts of the Second Amended Complaint as they relate to Defendant Pierce. The Plaintiff argues that many of her claims are not against Defendant Pierce, and does not object to their dismissal as against Defendant Pierce. The Court will first address the Plaintiff's constitutional claims concerning Defendant Pierce, and then address the Plaintiff's state law claims against Defendant Pierce.

### 1.      *The Plaintiff's Constitutional Claims:  Counts I to IV of the Second Amended Complaint*

Defendant Pierce argues that the Plaintiff's claims in Counts I to IV of the Second Amended Complaint fail to state claims upon which relief can be granted. Defendant Pierce argues for Rule 12(b)(6) dismissal because 1) Counts I to IV fail to show that Defendant Pierce was deliberately indifferent to a serious medical need; 2) Counts I to IV fail to allege Defendant Pierce's personal involvement in any constitutional violations; and 3) Counts II to IV fail to allege Defendant Pierce's authority over any aspects of Mr. Hobson's pre-trial detention or the

conditions of his confinement. The Plaintiff responds that Counts II and IV are not pled against Defendant Pierce, and she does not object to their dismissal as against Defendant Pierce. The Plaintiff argues that a Fourth Amendment "objectively unreasonable" standard should apply to her Count I claim against Defendant Pierce, but that a Fourteenth Amendment "deliberate indifference" standard should apply to her Count III claim against Defendant Pierce. The Plaintiff additionally argues that she has sufficiently pled Defendant Pierce's personal involvement in the denial of constitutional protections to support her Count I and III claims against Defendant Pierce.

Because the Plaintiff agrees that Counts II and IV do not apply to Defendant Pierce, the Court will grant the Motion to Dismiss with respect to Counts II and IV of the Second Amended Complaint as against Defendant Pierce.

a.    *The Fourth and Fourteenth Amendment Standards for Counts I and III*

Defendant Pierce argues that the Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted because the facts as pled do not show that he was deliberately indifferent, as required to substantiate a Fourteenth Amendment violation. The Plaintiff responds that the Fourth Amendment's objectively unreasonable standard is the correct standard to apply to Count I because Mr. Hobson was an arrestee but not a pretrial detainee during the entirety of his incarceration. The Plaintiff also responds that the Fourteenth Amendment's deliberate indifference standard is the correct standard to apply to Count III, and that the facts as pled meet that standard. Because the Court finds that the facts as articulated in

10

the Second Amended Complaint meet both the objectively unreasonable standard of the Fourth

Amendment and the more stringent deliberate indifference standard of the Fourteenth

Amendment, the Court will deny Defendant Pierce's Motion to Dismiss with respect to Counts I

and III on this basis.

The Eighth Amendment's ban on cruel and unusual punishment applies to pretrial

detainees via the due process clause of the Fourteenth Amendment. As the Seventh Circuit has

explained:

> The Eighth Amendment's ban on 'cruel and unusual punishments' requires prison
> officials to take reasonable measures to guarantee the safety of inmates, including the
> provision of adequate medical care. Although the Eighth Amendment applies only
> to convicted persons, pretrial detainees . . . are entitled to the same basic protections
> under the Fourteenth Amendment's due process clause. Accordingly, we apply the
> same legal standards to deliberate indifference claims brought under either the
> Eighth or Fourteenth Amendment.
>
> An Eighth Amendment claim based on inadequate medical care contains two
> elements: (1) the prisoner suffered an objectively serious harm that presented a
> substantial risk to his safety, and (2) the defendants were deliberately indifferent to
> that risk.

*Minix v. Canarecci*, 597 F.3d 824, 830–31 (7th Cir. 2010) (citations omitted). The *Minix* court

further explained that the deliberate indifference element "requires a dual showing that the

defendant: (1) subjectively knew the prisoner was at substantial risk [to his safety] and (2)

intentionally disregarded the risk." *Id.* at 831 (quotation marks omitted). An "objectively serious

medical condition" sufficient to substantiate a substantial risk to a prisoner's safety is a condition

"that 'has been diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would perceive the need for a doctor's attention.' " *Gayton v. McCoy*, 593

F.3d 610, 620 (7th Cir. 2010) (quoting *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)).

11

However, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton*, 593 F.3d at 620. A deliberate indifference claim does not require that prison officials "intended or desired the harm that transpired." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002)). "Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Walker*, 293 F.3d at 1037. To prevail under the deliberate indifference standard, "a prisoner is not required to show that he was literally ignored." *Greeno*, 414 F.3d at 653 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). However, "it is well settled that providing no medical care in the face of a serious health risk constitutes deliberate indifference." *Ortiz v. City of Chi.*, 656 F.3d 523, 538 (7th Cir. 2011). "[M]edical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Although the deliberate indifference standard applies to inmates who are pretrial detainees after probable cause hearings, a lower standard applies to inmates who have not had a probable cause hearing. The Second Amended Complaint alleges that Mr. Hobson never went before a judge for a probable cause hearing. Thus, he was an arrestee, not a pretrial detainee. As the Seventh Circuit has stated: "[W]e have long held that the Fourth Amendment protects a person's rights until she has had a probable cause hearing." *Ortiz*, 656 F.3d at 538; *see also Gaby*

*v. Dulin*, No. 3:06-CV-788-TS, 2008 WL 1925074, at *9 (N.D. Ind. May 1, 2008) (stating that "because the Plaintiff complains of treatment as a pretrial detainee prior to a judicial determination of probable cause, the Fourth Amendment governs"). The deliberate indifference standard is "more stringent" than the Fourth Amendment objectively unreasonable standard. *Ortiz*, 656 F.3d at 538.

To analyze whether a defendant's conduct is objectively unreasonable under the Fourth Amendment, courts evaluate four factors. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007); *see also Sides v. City of Champaign*, 496 F.3d 820, 827–28 (7th Cir. 2007). First, a court must consider whether a defendant was on notice of the medical need. Second, a court must consider the seriousness of the medical need, though "[t]he severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendment." *Williams*, 509 F.3d at 403. Third, a court must consider the scope of the requested treatment, which a court must balance against the seriousness of the medical need. Fourth, a court must consider "police interests" which are "wide-ranging in scope and can include administrative, penological, or investigatory concerns." *Id.*

As a preliminary matter, the Court notes that Defendant Pierce's frequent minimization of the facts as pled in the Second Amended Complaint is unavailing. The Second Amended Complaint states that the Plaintiff informed Defendant Pierce that her son "would not drink water that was not bottled" and that she "feared her son would die in the Jail if not treated appropriately." (Second Am. Compl. ¶ 13.) Defendant Pierce in his filings refers to this pleading as nothing more than the Plaintiff informing Defendant Pierce that her son "tries not to drink

non-bottled water" and of her son's "preference for bottled water." (Def.'s Br. in Supp. 9, ECF No. 108; Def.'s Reply 4, ECF No. 112.) As the Plaintiff argues, Defendant Pierce may not recharacterize the pleadings to his preference. At this stage, the Court presumes all well-pleaded allegations to be true, views them in the light most favorable to the Plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp.*, 67 F.3d at 608. Applying that standard, the Plaintiff's claim is much more than Defendant Pierce's recitals. The Plaintiff claims not that she informed Defendant Pierce of her son's preference for bottled water, but that she informed Defendant Pierce that her son's refusal to drink non-bottled water was so firm that she feared he would die if not given bottled water to drink. Despite Defendant Pierce's denial of this claim, and despite his insistence that the Plaintiff should have provided more evidence on this point, this is the version of the facts that the Court will apply to its analysis of Defendant Pierce's Motion to Dismiss.

Defendant Pierce argues that the Plaintiff cannot meet the deliberate indifference standard because the pleadings do not suggest that Defendant Pierce was informed that Mr. Hobson suffered from a diagnosed medical condition, and therefore he was not on notice of a substantial risk of serious harm requiring treatment. But the Plaintiff argues that the Count I claim meets the objectively unreasonable Fourth Amendment standard, and further argues that the Count III claim meets the deliberate indifference Fourteenth Amendment standard.

The Court agrees with the Plaintiff that the facts as pled meet the objectively unreasonable standard, which applies to the constitutional claim in Count I because—according to the Second Amended Complaint—Mr. Hobson was arrested without a warrant and was not

14

brought before a judge for a probable cause hearing at any point in his sixteen-day incarceration. According to the Second Amended Complaint, Defendant Pierce was on notice of Mr. Hobson's need. He was on notice because the Plaintiff informed him that her son "would not drink" non-bottled water, and that she feared he would die in jail unless he was given bottled water to drink. Balancing the second and third factors, the Court finds that the seriousness of the medical need was great, and the scope of the requested treatment—providing bottled water until such time as Mr. Hobson was brought before a judge for a probable cause hearing—was not great. Finally, the Court does not find that administrative or penological concerns outweighed the need which, according to the Plaintiff, was clearly expressed to Defendant Pierce. Therefore, the Court finds that Count I of the Second Amended Complaint contains allegations that plausibly suggest a likelihood of relief under the objectively unreasonable standard of the Fourth Amendment.

Furthermore, the Court finds that the facts as pled in Count III meet the deliberate indifference standard of the Fourteenth Amendment.[3] As the Seventh Circuit has stated succinctly: "[I]t is well settled that providing no medical care in the face of a serious health risk constitutes deliberate indifference." *Ortiz*, 656 F.3d at 538. Presuming all well-pleaded allegations to be true, viewing them in the light most favorable to the Plaintiff, and accepting as true all reasonable inferences to be drawn from the allegations, *Whirlpool Fin. Corp.*, 67 F.3d at

---

[3]The Plaintiff accepts that the higher deliberate indifference standard should apply to her claims in Count III. Although it appears that the failure to bring Mr. Hobson before a judge for a probable cause hearing would militate for application of the Fourth Amendment objectively unreasonable standard to all of the Plaintiff's constitutional claims, the Court need not resolve the question of which standard should apply where the parties agree on the deliberate indifference standard and where the facts as pled would meet the higher as well as the lower standard. *See Ortiz*, 656 F.3d at 538–39 (applying the objectively unreasonable standard, but stating "[t]his, however, is not a case that turns on the difference between the two standards" and concluding that the plaintiff would prevail "even if the higher standard applied").

608, the Plaintiff's claim is that Defendant Pierce provided no medical care whatsoever in the face of a serious health risk—the risk that Mr. Hobson would drink no water and die of dehydration. The Plaintiff is not required to plead that Defendant Pierce intended the harm that befell Mr. Hobson. On the contrary, "it is enough to show that [Defendant Pierce] knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653. That is what the Plaintiff has done. She has established that she did more than inform Defendant Pierce of her son's preference for bottled water. She has established in the Second Amended Complaint that she put Defendant Pierce on notice of a substantial risk of harm to her son, and, drawing the reasonable inference in favor of the Plaintiff, she has established at this stage of the proceedings that Defendant Pierce disregarded that risk. The Court is not persuaded by Defendant Pierce's argument that because the Plaintiff has not alleged that she told him her son suffered from a diagnosed medical condition, he must not have been on notice of a substantial risk of serious harm requiring a response. Defendant Pierce is simply wrong in stating that "[i]n order to succeed on the section 1983 claim, Plaintiff must establish that Hobson had been diagnosed with and suffered from a medical condition." (Def.'s Br. in Supp. 8, ECF No. 108.) While the Plaintiff must plead facts suggesting that Defendant Pierce was on notice of a serious medical condition, such a medical condition can be one "diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton*, 593 F.3d at 620 (quotation marks omitted) (emphasis added). The Court finds that, as pled, the notice given to Defendant Pierce was of a condition—refusal to drink water—so obvious that even a lay person would perceive the need for Defendant Pierce's involvement

16

whether or not such condition had ever been diagnosed. *See Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). By disregarding the condition as related to him by the Plaintiff, Defendant Pierce's conduct as pled in Count III of the Second Amended Complaint meets the deliberate indifference standard under the Fourteenth Amendment.

b.      *Defendant Pierce's Personal Involvement as Alleged in Counts I and III*

Defendant Pierce argues that Counts I and III of the Plaintiff's Second Amended Complaint fail to state a claim upon which relief can be granted because the facts as pled do not show that he was personally involved in any alleged constitutional violations, as required to substantiate Counts I and III. The Plaintiff responds that she has appropriately pled Defendant Pierce's personal involvement in the constitutional violations described in Counts I and III. Defendant Pierce replies that the Plaintiff's Second Amended Complaint has failed to correct the deficiencies which compelled the Court to dismiss the former claims against him. Because the Court finds that the facts as articulated in the Second Amended Complaint adequately allege Defendant Pierce's personal involvement with the alleged constitutional violations in Counts I and III, the Court will deny Defendant Pierce's Motion to Dismiss with respect to Counts I and III on this basis.

"A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson*, 538 F.3d at 776 (quoting *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) and *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th

17

Cir. 1981)). A plaintiff can establish a defendant's personal liability under § 1983 "by

demonstrating a causal link between the defendant's conduct and the plaintiff's injury." *Hill v.*

*St. Joseph Cnty. Jail*, No. 3:10 CV 128 JM, 2010 WL 1996558, at *3 (N.D. Ind. May 17, 2010)

(citing *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985)); *see also Starzenski v. City of Elkhart*,

87 F.3d 872, 879 (7th Cir. 1996) (stating that to establish a § 1983 claim against a state actor, a

plaintiff must show "a causal connection between the state's failure and the plaintiff's injury").

In its previous Opinion and Order, the Court stated that the Plaintiff had failed to allege

Defendant Pierce's personal involvement in the constitutional violations. Specifically, the Court

stated:

> There are no factual allegations in the Amended Complaint regarding Defendant
> Pierce's knowledge of Mr. Hobson or his condition, Defendant Pierce's
> communication with Mr. Hobson's family, or Defendant Pierce's observation of Mr.
> Hobson's symptoms. In other words, there are no factual allegations suggesting
> Defendant Pierce's direct, personal involvement in any provision of care or failure
> to provide care to Mr. Hobson.

(Opinion & Order 5–6, ECF No. 55.)

The Court finds that the Second Amended Complaint has corrected the pleading

deficiencies noted in the previous dismissal of the claims against Defendant Pierce. The Plaintiff

has now pled that Defendant Pierce had knowledge both of Mr. Hobson and of his condition.

The Plaintiff has now pled that Defendant Pierce had communication with Mr. Hobson's family,

and that Defendant Pierce had specific opportunity to interact with Mr. Hobson. Furthermore, the

Plaintiff has pled that Defendant Pierce had "the responsibility for evaluating, monitoring and

treating Mr. Hobson while he was detained at the Jail." (Second Am. Compl. ¶ 17.) The Court

finds that the pleadings establish a likelihood of relief because they show a causal connection

18

between Defendant Pierce's conduct and the constitutional injuries to Mr. Hobson. Specifically, the Plaintiff has pled that she put Defendant Pierce on notice of a serious condition with life-threatening implications for Mr. Hobson,[4] and that in spite of Defendant Pierce's knowledge of this condition, Mr. Hobson died two weeks later because of the condition. Moreover, she has pled that Defendant Pierce not only evaluated the Plaintiff at the beginning of his incarceration, but was one of the Jail personnel responsible for Mr. Hobson's care and treatment during the entire period of his incarceration. In short, the Plaintiff has now pled facts showing that her right to relief on the constitutional claims against Defendant Pierce is more than speculative. She has pled facts which suggest Defendant Pierce was personally involved in the constitutional violations, and that his actions (or lack thereof) were causally connected to the violations.

c.    *Defendant Pierce's Culpability as Alleged in Count III*

Defendant Pierce argues that Counts II, III, and IV should be dismissed because the Plaintiff has not alleged that he was responsible for the conditions of Mr. Hobson's confinement or the duration of his detention. The Plaintiff responds that Counts II and IV are not directed against Defendant Pierce for exactly the reasons that Defendant Pierce articulates. As discussed above, the Court will dismiss Counts II and IV as against Defendant Pierce. Defendant Pierce's argument does not appear to apply to Count III, however. As the Court has already shown, Count

---

[4]The Court here reiterates its disagreement with Defendant Pierce's characterization of the Plaintiff's notice to him as nothing more than notice of Mr. Hobson's "preference for bottled water." (Def.'s Br. in Supp. 12, ECF No. 108.) Further, the Court notes that Defendant Pierce's argument about the weakness of the Plaintiff's "uncorroborated" allegations against him (*id.* 14) is not relevant at the motion to dismiss stage, where the Court will accept as true the Plaintiff's well-pled allegations.

III is a claim for violations of constitutional rights by deliberate indifference to Mr. Hobson's

serious risk of physical harm and death in the Jail. Count III relates to Mr. Hobson's medical

care. Furthermore, Count III is specifically directed against "the named Defendants . . . and

contractors." (Second Am. Compl. ¶ 63.)

     For all the reasons discussed above, the Court will deny the Motion to Dismiss with

respect to Counts I and III of the Second Amended Complaint as against Defendant Pierce.


**2.**    *The Plaintiff's State Law Claims:  Counts V to X of the Second Amended Complaint*

     Defendant Pierce argues that the Plaintiff's state law claims against him—Counts V to X

of the Second Amended Complaint—fail to state claims upon which relief can be granted

because he is a qualified health care provider, and because the Plaintiff has not complied with

the Indiana Medical Malpractice Act (MMA). The Plaintiff argues that she need not comply with

the Indiana MMA because most of her claims are not for malpractice. She asserts that her state

law claims against Defendant Pierce, with the exception of the negligence claim in Count VIII,

are claims of deliberate, willful indifference, which does not fall within the ambit of the MMA.

The Plaintiff also notes that her Count VII false imprisonment state law claim is not pled against

Defendant Pierce, and she does not object to its dismissal. Accordingly, the Court will dismiss

Count VII of the Second Amended Complaint as against Defendant Pierce.

     Defendant Pierce attaches to his Motion an Affidavit which indicates that Defendant

Pierce was a qualified health care provider from October 17, 2009, to November 2, 2009, that no

complaint has been filed with the Indiana Department of Insurance against him by the Plaintiff,

and that no medical review panel has been formed pursuant to the MMA. (Wilkins Aff., ECF No. 108-1.) In light of this showing, the Plaintiff agrees that her Count VIII state law negligence claim against Defendant Pierce should be dismissed, and the Court will dismiss Count VIII of the Second Amended Complaint as against Defendant Pierce.

The Indiana Medical Malpractice Act states that "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . . and (2) an opinion is given by the panel." Ind. Code § 34-18-8-4. The MMA defines malpractice as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." *Id.* § 34-18-2-18. "[T]he [MMA] grants subject matter jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court." *H.D. v. BHC Meadows Hosp., Inc.*, 884 N.E.2d 849, 853 (Ind. Ct. App. 2008). Thus, although "[t]he Indiana General Assembly doesn't decide the jurisdiction of the federal courts," a claim that amounts to a state malpractice claim "states no claim upon which relief can be granted under Indiana law," and a federal court will dismiss such a claim under Rule 12. *Estate of Rice v. Corr. Med. Servs.*, 596 F. Supp. 2d 1208, 1225 (N.D. Ind. 2009) (dismissing without prejudice a state law negligence claim because the plaintiff had not fully complied with the Indiana MMA).

Defendant Pierce argues that the Plaintiff's state law claims must be judged based on "substance rather than form," *Int'l Steel Co. v. Charter Builders, Inc.*, 585 F. Supp. 816, 820 (S.D. Ind. 1984), and that although the Plaintiff maintains that her claims are for deliberate conduct only, in truth the theory advanced by the Plaintiff "sounds in medical malpractice,

regardless of the spin Plaintiff puts on it in her response," (Def.'s Reply 9, ECF No. 112).

The Plaintiff responds that "[d]eliberate indifference is not medical malpractice."
*Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). The Plaintiff cites to an Indiana Court
of Appeals case discussing the degree of deliberate indifference necessary to go beyond a mere
malpractice claim: "Deliberate indifference in this constitutional sense may thus be found where
reasonable care is denied or unreasonably delayed with the knowledge that such denial/delay
will cause the unnecessary infliction of pain and suffering which serves no penological purpose
*and* when the care is intentionally or wantonly withheld." *Naked City, Inc. v. State*, 460 N.E.2d
151, 161 (Ind. Ct. App. 1984) (quotation marks omitted). The Plaintiff argues that the wanton
and gratuitous conduct committed by Defendant Pierce as pled in the Second Amended
Complaint falls outside the MMA as articulated by the Indiana Court of Appeals in *Collins v.
Thakkar*, 552 N.E.2d 507 (Ind. Ct. App. 1990). The *Thakkar* court held that state law tort claims
were not barred by the MMA where the defendant doctor had performed an unwanted abortion
on a patient with whom he was having a sexual relationship. The *Thakkar* court stated:

> In no way can it logically be said that the legislature intended such behavior to
> constitute the rendition of health care or professional services. The acts as alleged,
> although plainly occurring during the rendition of health care, were not designed to
> promote the patient's health. Neither do they call into question [the defendant
> doctor]'s use of the skill or expertise required of members of the medical profession.
> As with an ordinary negligence action, the allegations of [the plaintiff]'s complaint
> present the kinds of factual issues capable of resolution by a jury without application
> of the standard of care prevalent in the local medical community.

*Id.* at 511. The *Thakkar* court summarized previous Indiana cases "as standing for the
proposition that the [MMA] includes within its scope only those claims for damages originating
from the giving of or failure to give appropriate health care or professional services." *Id.* at

22

509–10.

The Court has previously held that § 1983 claims under the Fourteenth Amendment were not precluded by the Indiana MMA where the plaintiff's claims were for deliberate indifference and not for medical malpractice. *Henderson v. Fries*, No. 1:09-CV-268-TLS, 2010 WL 3039205, at *2 (N.D. Ind. Aug. 3, 2010); *see also Estate of Norris v. Putnam Cnty. Sheriff*, No. IP 01-0509-C-B/S, 2002 WL 472302, at *3 (S.D. Ind. Mar. 25, 2002) (finding negligence allegations not actionable under § 1983, but finding deliberate indifference allegations actionable under § 1983). Furthermore, the Supreme Court has stated that actionable deliberate indifference states a § 1983 cause of action against prison doctors just as it states a cause of action against prison guards. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (stating that deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care"); *see also Glade v. Lundskow*, 831 F. Supp. 2d 1055, 1059 (N.D. Ill. 2011) (finding Illinois medical malpractice statute did not bar federal tort claims, and stating that the plaintiff "could bring the exact same claim if he was a prisoner suing the Bureau of Prisons for a series of sexual assaults committed by one of its guards").

Indiana state courts "have not drawn sharp lines" concerning the MMA, and "have declined, for example, to define the coverage of the Medical Malpractice Act in terms of covered unintentional torts and excluded intentional torts." *Guyant v. Johnson & Johnson, Inc.*, No. 1:03-CV-0015-DFH, 2003 WL 1921819, at *4 (S.D. Ind. Apr. 21, 2003). Because there is no clear delineation, the key point of analysis is whether the conduct in question is related or "unrelated

to the promotion of a patient's health or the provider's exercise of professional expertise, skill or judgment." *Thakkar*, 552 N.E.2d at 510; *see Glade*, 831 F. Supp. 2d at 1059 (finding a claim not barred by Illinois's medical malpractice law where "[t]he alleged breach of Defendant's duty to protect Plaintiff from third-party harm does not arise from an unreasonable application of professional knowledge or skill").

In a 2011 Northern District of Indiana decision based on similar facts, Judge Moody held that a state law wrongful death claim concerning an inmate who passed away while in the Lake County Jail was not precluded by the Indiana MMA. *Sowell v. Dominguez*, No. 2:09 CV 47, 2011 WL 294758, at *11 (N.D. Ind. Jan. 26, 2011). Judge Moody stated that "[t]o avoid application of the Malpractice Act, a plaintiff needs to prove that a qualified health care provider's actions were unrelated to the promotion of the plaintiff's health or an exercise of the provider's professional expertise, skill, or judgment." *Id.* at *10. Noting that it was "not clear" whether the defendants' alleged deliberate indifference "occurred as part of their provision of medical services" to the plaintiff, *id.* at *11, Judge Moody stated as follows:

> [T]he . . . defendants have not pointed out that [the plaintiff] has no evidence that they acted with deliberate indifference or that their actions were not taken as part of a provision of medical care to [the decedent]. Accordingly, at this point, the . . . defendants have not demonstrated the absence of a genuine issue of material fact as to whether they acted with deliberate indifference or whether their acts of deliberate indifference were part of their provision of medical care to [the decedent]. Thus, [the plaintiff]'s claim for wrongful death is not barred by the Malpractice Act so long as she is stating a claim for deliberate indifference and not negligence.

*Id.* (citation omitted).

Although Judge Moody was analyzing this issue in a summary judgment context, the Court finds his analysis persuasive. Here, the facts as pled in the Second Amended Complaint

show deliberate indifference on the part of Defendant Pierce, as stated in the Court's earlier discussion of the Plaintiff's federal § 1983 claims. Moreover, the facts as pled in the Second Amended Complaint show that the alleged acts of deliberate indifference did not relate to the provision of medical care. Withholding bottled water from an inmate when on notice that the inmate may die in jail if not given bottled water has nothing to do with the provision of medical care. This was a situation where the need for action was "so obvious," *Gayton*, 593 F.3d at 620, that the factual issues in the Second Amended Complaint are "capable of resolution by a jury without application of the standard of care prevalent in the local medical community." *Thakkar*, 552 N.E.2d at 511. As the Court has held above, the Plaintiff's claims against Defendant Pierce are in essence deliberate indifference claims, and "[d]eliberate indifference is not medical malpractice." *Duckworth*, 532 F.3d at 679. Stated in the *Thakkar* court's language, the Plaintiff's state law claims against Defendant Pierce are not "claims for damages originating from the giving of or failure to give appropriate health care or professional services." *Thakkar*, 552 N.E.2d at 510. Stated in the *Sowell* court's language, the claims for wrongful death, survival action, and intentional infliction of emotional distress are claims "for deliberate indifference and not negligence." *Sowell*, 2011 WL 294758, at *11. Therefore, the Plaintiff's state law intentional tort claims—Counts V, VI, and IX—as pled against Defendant Pierce are not barred by the MMA. Accordingly, the Court will deny the Motion to Dismiss with respect to Counts V, VI, and IX as against Defendant Pierce.[5]

---

[5]Neither Defendant Pierce nor the Plaintiff advance specific arguments concerning the Plaintiff's Count X indemnification claim. For the reasons discussed below, *infra* at B.2, the Court will grant the Motion to Dismiss with respect to Count X as against Defendant Pierce.

**B.     The Edgewater Defendants' Motion for Partial Summary Judgment**

The Edgewater Defendants (Defendants Edgewater Systems for Balanced Living, Anthony, Robbins, Harris, and Kerr) move for partial summary judgment on . the Plaintiff's state law claims against them. They argue that no genuine issues of material fact exist as to whether the Plaintiff's state law claims against them state claims upon which relief can be granted under Indiana law. In support, they submit the Lake County Autopsy of Mr. Hobson [ECF No. 110-1] and an Affidavit of Nancy Wilkins [ECF No. 110-2] stating that the Edgewater Defendants were qualified health care providers in October and November 2009, and that the Plaintiff has not filed a proposed complaint against the Edgewater Defendants with the Indiana Department of Insurance. The Plaintiff argues that her state law causes of action do adequately allege claims upon which relief can be granted, or, alternatively, that triable issues of material fact exist as to whether those claims should go forward.[6]

Specifically, the Edgewater Defendants argue: 1) that the Plaintiff's claims for wrongful death, survival action, negligence, and intentional infliction of emotional distress fail to state claims upon which relief can be granted under Indiana law because the Edgewater Defendants were qualified health care providers on all relevant dates but the Plaintiff has not complied with

---

[6]The Edgewater Defendants have styled their Motion as a Motion for Partial Summary Judgment, and have included the Lake County Autopsy of Mr. Hobson and the Wilkins Affidavit in support of their Motion. However, they have not included a section labeled "Statement of Material Facts" as required by Local Rule 56-1(a). They also state that the issue is whether the Plaintiff "has stated a claim under Indiana law upon which relief can be granted" (Edgewater Defs.' Mem. in Supp. 2, ECF No. 110) and argue that the Plaintiff "has failed to state a claim under Indiana law upon which relief can be granted" (*id.* 4). They ask that the state law claims for wrongful death, survival action, negligence, and intentional infliction of emotional distress "be dismissed." (*Id.* 8.) In spite of these procedural irregularities, the Court will analyze whether there exist genuine issues of material fact upon which a jury could return a verdict in favor of the Plaintiff on the state law claims against the Edgewater Defendants.

the Indiana MMA and the statute of limitations for filing a claim with the Indiana Department of
Insurance has expired; and 2) that the Plaintiff's Count X claim for indemnification fails to state
a claim upon which relief can be granted because the Edgewater Defendants are not
governmental entities or public employees under Indiana Code § 34-13-4-1. The Plaintiff
responds that her noncompliance with the MMA is irrelevant because her claims for deliberate
indifference do not fall under the MMA. Additionally, the Plaintiff responds that the indemnity
claims apply to the Edgewater Defendants.

The Court will first address the Plaintiff's wrongful death, survival action, negligence,
and intentional infliction of emotional distress claims concerning the Edgewater Defendants, and
then address the Plaintiff's indemnification claim against the Edgewater Defendants.

1.     ***The Plaintiff's Wrongful Death, Survival Action, Negligence, and Intentional
       Infliction of Emotional Distress Claims:  Counts V, IV, VIII and IX of the Second
       Amended Complaint***

The Edgewater Defendants argue that the Plaintiff's state law claims against them should
be dismissed because the Plaintiff is making claims against them for a failure to provide
appropriate health care, and because the Plaintiff has not complied with the Indiana MMA. The
Plaintiff argues, as outlined above concerning the state law claims against Defendant Pierce, that
the deliberate indifference claims against the Edgewater Defendants do not fall within the ambit
of the MMA, and that compliance with its strictures is therefore not required.

The Court notes that the Plaintiff did not object to the dismissal of her state law
negligence claim against Defendant Pierce upon a showing that Defendant Pierce was a qualified

health care provider under Indiana law during the relevant time period. (*See* Pl.'s Resp. to Def.
Pierce's Mot. to Dismiss 3, ECF No. 111.) The Edgewater Defendants have made an identical
showing—that they were qualified health care providers under Indiana law during the relevant
time period. Yet, for reasons that are not clear to the Court, the Plaintiff maintains that her state
law negligence claim against the Edgewater Defendants should not be dismissed. The Court
disagrees. The state law negligence claim against the Edgewater Defendants is in essence a claim
that the Edgewater Defendants failed to provide health care in accordance with the appropriate
standard of care, and such a claim is precluded by the Indiana MMA. Because an Indiana court
would not have subject matter jurisdiction to consider such a claim, it fails to state a claim upon
which relief can be granted in this Court, and the Court will grant the Motion for Partial
Summary Judgment on Count VIII as against the Edgewater Defendants. *See Estate of Rice*, 596
F. Supp. 2d at 1225 (dismissing a state law negligence claim because it "state[d] no claim upon
which relief can be granted under Indiana law"). Furthermore, the Court agrees with the Plaintiff
that the Count VII false imprisonment claim is not pled against the Edgewater Defendants, so no
dismissal is necessary.

　　　As to the Plaintiff's claims for wrongful death (Count V), survival action (Count VI), and
intentional infliction of emotional distress (Count IX), the Court's analysis is the same as it was
for the state law claims against Defendant Pierce. The Plaintiff has pled that the Edgewater
Defendants were equally on notice of Mr. Hobson's refusal to drink non-bottled water to the
extent that if he were denied bottled water, "he would not drink water at all." (Second Am.
Compl. ¶ 11.) The Plaintiff has pled that the Edgewater Defendants had the responsibility for

"evaluating, monitoring and treating Mr. Hobson while he was detained at the Jail." (*Id.* ¶ 17.)

Specifically, the Plaintiff alleges that Defendant Robbins personally observed Mr. Hobson's lack

of communication but did nothing (*id.* ¶ 19) and that Defendant Kerr was "directly warned"

about Mr. Hobson's phobia of non-bottled water (*id.* ¶ 12). These claims are in essence claims

for deliberate indifference. They are not claims for denial of health care services under an

appropriate standard of care.

The Edgewater Defendants argue that "the allegations made by [the Plaintiff] question

whether Edgewater and/or its employees used the appropriate skill and expertise when treating

Kenneth Hobson." (Edgewater Defs.' Reply 5, ECF No. 123.) The Court disagrees. The claims

for wrongful death, survival action, and intentional infliction of emotional distress question

whether the Edgewater Defendants appropriately took no action when notified of Mr. Hobson's

condition as alleged by the Plaintiff. As discussed above, this is a question "capable of resolution

by a jury without application of the standard of care prevalent in the local medical community."

*Thakkar*, 552 N.E.2d at 511. Further, the Edgewater Defendants argue that "the only duty they

owed to Mr. Hobson was based upon the provision of mental healthcare, which required the

application of professional knowledge or skill." (*Id.* 7.) Again, the Court disagrees. The

Edgewater Defendants owed Mr. Hobson more than just a duty to provide mental healthcare.

They also owed Mr. Hobson the same duty that any non-medical employee or contractor at the

Jail would owe him. *See Estelle*, 429 U.S. at 104–05 (stating that deliberate indifference can be

manifested "by prison doctors in their response to the prisoner's needs or by prison guards in

intentionally denying or delaying access to medical care"); *Glade*, 831 F. Supp. 2d at 1059

(stating, concerning claim against medical provider, that the plaintiff "could bring the exact same claim if he was a prisoner suing the Bureau of Prisons for a series of sexual assaults committed by one of its guards"). In this case, construing all facts in a light most favorable to the Plaintiff and drawing all reasonable inferences in her favor, *Bellaver*, 200 F.3d at 491–92, the Edgewater Defendants owed Mr. Hobson a duty to take some action upon being informed that he "would not drink water at all" if not given bottled water. (Second Am. Compl. ¶ 11.) Based on the facts before the Court at this point, a reasonable jury could determine that the Edgewater Defendants breached that duty.

Accordingly, the Motion for Partial Summary Judgment will be denied with respect to Counts V, VI, and IX of the Second Amended Complaint as against the Edgewater Defendants.


**2.      *The Plaintiff's Indemnification Claim: Count X of the Second Amended Complaint***

Finally, the Edgewater Defendants argue that Defendant Edgewater is not a governmental entity, that its employees are not public employees, and that the Plaintiff's indemnification claim in Count X of the Second Amended Complaint should be dismissed. The Edgewater Defendants also argue that Indiana Code § 34-13-4-1 does not create an indemnification mandate for governmental entities to pay judgments against public employees, though they appear to abandon this argument in light of the statutory language in the current version of § 34-13-4-1, which provides that a governmental entity "shall" pay "any judgment (other than for punitive damages)."

The Plaintiff argues that "[w]hen private individuals or groups are endowed by the state

with powers or functions governmental in nature, they become agencies or instrumentalities of

the state and are subject to the laws and statutes affecting governmental agencies and

corporations." *Ayers v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1235 (Ind.

1986) (holding that a volunteer fire department was a governmental entity); *but see Harrison v.*

*Veolia Water Indianapolis, LLC*, 929 N.E.2d 247, 252–53 (Ind. Ct. Ap. 2010) (holding that a

private utility company was not a governmental entity). Because confined persons are entitled to

both medical and mental health care under Indiana law, Ind. Code § 11-10-3-2(c), the Plaintiff

argues Defendant Edgewater became an instrumentality of the state responsible for

indemnification under § 34-13-4-1. The Edgewater Defendants argue that under Indiana law,

Defendant Edgewater is not a governmental entity, and its employees are not public employees.

Indiana Code § 34-6-2-49 defines a governmental entity as "the state or a political subdivision of

the state." Section 34-6-2-38 defines a public employee as "a person presently or formerly acting

on behalf of a governmental entity, whether temporarily or permanently or with or without

compensation, including members of boards, committees, commissions, authorities, and other

instrumentalities of governmental entities." Section 34-6-2-38(b) specifically excludes from the

definition of public employees both independent contractors and agents or employees of

independent contractors, subject to a few exceptions including "physicians licensed under IC 25-

22.5 . . . who provide medical . . . care to confined offenders . . . within the course of their

employment by or contractual relationship with the department of correction."

Because the Edgewater Defendants supplied no citations for their argument that they did

not fall within the statutory definitions of governmental entities and public employees in the

Memorandum in Support of their Motion for Partial Summary Judgment [ECF No. 110], all of their citations and argument from the Indiana Code on this point came in their Reply [ECF No. 123]. The Plaintiff has had no opportunity to respond to the Edgewater Defendants' arguments about the definitions of governmental entities and public employees under the relevant statutes. However, the Court need not consider at this stage of the proceedings whether any or all of the Edgewater Defendants are implicated in the indemnification claim.

In *Sowell*, discussed above, Judge Moody found a state law indemnification claim under § 34-13-4-1 "not ripe for adjudication" at the summary judgment stage. *Sowell*, 2011 WL 294758, at *14. Judge Moody explained his finding on indemnification as follows:

> No one has been found liable yet in this case and no judgment has been entered. This court only has subject matter [jurisdiction] over a case in which the controversy is ripe. A claim is not ripe if it 'rests upon contingent future events that may not occur at all.' *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted). Accordingly, any claim for indemnity resulting from this suit is not ripe until the underlying liability has been established. *See Doe v. City of Chi.*, 360 F.3d 667, 672 (7th Cir. 2004) ("We have warned repeatedly against trying to resolve indemnity before liability."); *Lear Corp. v. Johnson Elec. Holdings, Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."). At this point it is not clear that any of the Lake County Jail defendants will be held liable under Section 1983, that they acted within the scope of employment, or that they are all being defended by the state. Therefore, [the plaintiff]'s indemnification claims will be dismissed without prejudice for lack of subject matter jurisdiction.

*Id.* (additional citations omitted). On this nearly identical issue, the Court again finds Judge Moody's reasoning persuasive. Because no liability has been established in this matter, the Plaintiff's indemnification claims are premature. Accordingly, the Court will dismiss Count X without prejudice as against the Edgewater Defendants for lack of subject matter jurisdiction. For the same reasons, the Court will grant the Motion to Dismiss on Count X of the Second

Amended Complaint as against Defendant Pierce, dismissing Count X without prejudice as against Defendant Pierce.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant Pierce's Motion to Dismiss [ECF No. 107]. Specifically, Counts II, IV, VII, VIII, and X are dismissed without prejudice as against Defendant Pierce. The Court GRANTS IN PART and DENIES IN PART the Edgewater Defendants' Motion for Partial Summary Judgment [ECF No. 109]. Specifically, the Court grants the Motion for Partial Summary Judgment with respect to Count VIII as against the Edgewater Defendants, reiterates that Count VII is not pled against the Edgewater Defendants, and dismisses Count X without prejudice as against the Edgewater Defendants for lack of subject matter jurisdiction.

SO ORDERED on September 24, 2012.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION