## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| DOROTHY HOBSON, as personal representative and administrator for the Estate of Kenneth Hobson, Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | CAUSE NO.: 2:10-CV-429-TLS-PRC |
| JOHN BUNCICH in his official capacity as Sheriff of Lake County, Indiana, et al., Defendants. | ) ) ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Sanctions [DE 187], filed by Plaintiff Dorothy Hobson, as personal representative and administrator for the Estate of Kenneth Hobson, on November 21, 2012. On December 5, 2012, Defendants Med-Staff, Inc., Manuel Barragan, Denise Gross, Daryl Frey, and unknown employees and supervisors of Med-Staff, Inc. filed a response brief. Also on December 5, 2012, Defendant Dr. William Pierce filed a response brief. On December 12, 2012, separate response briefs were filed by (1) Defendants Edgewater Systems for Balanced Living, Inc., Dr. Antony, Patti Kerr, Dr. Robbins, and Michelle Harris (collectively "Edgewater Defendants"); (2) Defendants Roy Dominguez, individually, Bennie Freeman, individually, Christopher McQuillin, individually, Lake County Jail Deputy Wardens Jennifer Malanshek and Craig Ponton, Lake County Jail Lieutenant Yvonne Haley, Sergeant Joi McDaniel, Jail Officers Cathy Krieg, Daryl Brown, Jerron Biddings, Terry Caverly, Camille Clark, Mark Collins, Georgette Gonzalez, Rita Key, William Lumsdon, Renita Merriweather, David Murchek, Ashley Powell, Donita Smith, and Deborah Stack (collectively "Non-Entity Lake County Defendants"); and (3) Defendant John Buncich, in his official capacity as Lake County Sheriff. On December 19, 2012, Plaintiff filed a reply brief.

## PROCEDURAL AND FACTUAL BACKGROUND

### A. Summary of the Case

On October 16, 2009, Plaintiff's son, Kenneth Hobson, was arrested by officers from the Schererville Police Department and detained at the Lake County Jail ("Jail"). Mr. Hobson, who was 43 years old, died at the Lake County Jail on November 2, 2009. Plaintiff's position in this litigation is that her son died of dehydration. Plaintiff alleges in the introduction to the motion that, although Mr. Hobson was housed at the Jail's medical and mental health unit for the duration of his detention, he was never seen by a doctor or a nurse, he was never evaluated or treated by a psychiatrist or a mental health counselor, and the Jail corrections and health care staff ignored his family members' pleas that the Jail attend to his clinically diagnosed paranoia by providing him with bottled water.

### B. The Department of Justice Inspection, Final Report, and Consultant Reports

Prior to Mr. Hobson's detention, the conditions at the Jail were inspected by the United States Department of Justice ("DOJ") on December 15-17, 2008 pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997. The Jail was toured by DOJ experts in the fields of suicide prevention and mental health care, medical care, and environmental conditions.

On December 7, 2009, the DOJ issued a findings letter and recommendations ("final report") concerning the inspection to those individuals and entities involved with the inspection, including former Sheriff Roy Dominguez. The final report is a public document that was made available on the internet by the DOJ. The final report detailed the findings of the DOJ experts from their on-site inspection of the Jail, indicating that the "experts assisted us in reviewing records, interviewing staff, interviewing inmates, and inspecting facility living conditions." Edgewater Br., Exh. I, p. 1. The document indicates that then-Lake County Sheriff Roy Dominguez and other Jail officials

cooperated fully with the DOJ review that took place on site in December 2008. The final report further explains that, at the conclusion of the inspection, the DOJ provided an "exit debriefing," during which their three experts provided their initial impressions and tentative concerns.

Important to the instant motion, the conclusion of the December 7, 2009 DOJ final report provides: "Assuming the present spirit of cooperation from Lake County is continuing, *we also are willing to send our consultants' evaluations under separate cover*. These reports are not public documents." Edgewater Br., Exh. I, p. 33 (emphasis added).

A lengthy telephonic meeting occurred on December 10, 2009, during which Attorney John Kopack, counsel for then-Lake County Sheriff Roy Dominguez, requested that the DOJ provide the consultant reports as offered in the December 7, 2009 final report. On December 11, 2009, Attorney Kopack wrote a letter to the DOJ, acknowledging the prior day's telephonic meeting and reiterating the request for the consultant reports:

- A formal request was and is being made by the Sheriff for copies of the DOJ's expert reports to assist in evaluating their recommendations and formulating a response to implement the recommendations.

- Said reports shall remain confidential and exempt from disclosure under the Indiana Public Records Act (I.C. 5-14-3-4(a)(3), (b)(2), (b)(6) which provide for confidentiality of expert's reports as protected federal records, attorney-work product and/or deliberative materials).

- Mr. Weiss will forward the expert reports via email in pdf format to Attorney Kopack, who will ensure confidentiality is preserved and that all copies are destroyed after their use by the Sheriff's team.

- Mr. Weiss also noted the DOJ experts will be made available for consultation with the Jail's medical and mental health staff as they begin to formulate a response and timeline to implement the recommendations.

Buncich Resp., Exh. B, p. 2.

Accompanied by a cover letter dated December 14, 2009, three consultant reports were sent to Attorney Kopack by Attorney William G. Maddox of the Special Litigation Section of the Civil Rights Division of the DOJ. The reports are titled "Report on Mental Health Care at Lake County Jail," "Report on Lake County Correctional Facility," and "Report of Environmental Health & Safety Findings at the Lake County Jail." In the cover letter, Attorney Maddox reaffirms that the consultant reports are not public documents and must be maintained as confidential. He describes the reports as not necessarily reflecting the official conclusions of the DOJ but recognizing that the consultants' "observations, analysis, and recommendations provide further elaboration on the issues discussed in [the DOJ's December 7, 2009] findings letter and offer practical technical assistance in addressing those issues." Edgewater Resp., Exh. H., p. 1.[1]

## C. Procedural History of the Discovery Dispute

Plaintiff filed her Complaint on October 28, 2010, alleging claims under 42 U.S.C. § 1983 and state law against seventeen defendants arising from the death of Mr. Hobson on November 2, 2009. On November 16, 2010, Plaintiff filed a First Amended Complaint. On October 28, 2011, Plaintiff filed a Second Amended Complaint, which included claims against 32 named defendants and additional unknown employees and supervisors of the Jail, Med-Staff, Inc. ("Med-Staff"), and Edgewater Systems for Balanced Living ("Edgewater"). Plaintiff's Amended Complaint and Second Amended Complaint cite the December 7, 2009 DOJ final report.

---

[1] The Edgewater Defendants suggest in their brief that this letter provides that the reports were to be destroyed after review. This is not the case. Rather, the December 11, 2009 letter from Attorney Kopack includes the condition that all copies will be destroyed after their use by the Sheriff.

Counsel for the Edgewater Defendants entered appearances in this matter on March 2, 2011. On March 4, 2011, counsel for the Edgewater Defendants met with the representatives of Edgewater to gather information and documents relevant to this case.

In June 2011, Plaintiff served her first set of discovery on various Defendants, including but not limited to Edgewater, Patti Kerr, and Dr. Antony. This included the following discovery identified by Plaintiff in her reply brief as relevant to the instant discovery dispute.

Document Request No. 8, served on each of Defendant Med-Staff, Defendant Edgewater, and Defendant Sheriff in his official capacity, asks for "[a]ll Documents comprising Communications of any kind relating to . . . the facts alleged in the complaint . . . including but not limited to . . . all Communications . . . with other law enforcement agencies . . . ." Pl. Reply, Exh. C., pp. 2, 4, 6.

Document Request No. 32 to Defendant Med-Staff asks for "[d]ocuments relating to any internal or external review or audit of the health care of detainees at Lake County Jail, with which Med-Staff had any involvement." Pl. Reply, Exh. A, p. 2. Document Request No. 31 to Edgewater asks for "[a]ll Documents relating to any internal or external review or audit, with which Edgewater had any involvement, of the mental health screening, evaluation, treatment, and monitoring for suicide of detainees at Lake County Jail." *Id*. at p. 4. Document Request No. 16 to the Sheriff in his official capacity also seeks "[d]ocuments relating to any internal or external review or audit of the health care of detainees at Lake County Jail, with which Med-Staff had any involvement." *Id*. at p. 6.

Interrogatory No. 3 directed to Defendants Med-Staff, Inc., Edgewater, and the Sheriff in his official capacity provides: "For any Document responsive to Plaintiff's discovery requests . . .

which has been lost, discarded or destroyed, please identify each such Document as completely as possible and state the approximate date it was lost, discarded or destroyed; the circumstances and manner in which it was lost, discarded or destroyed, including the identities of all Persons involved; the reasons for disposing of the Document; the identity of any Persons with knowledge of its content; and the identity of the last Person known to have seen it." Pl. Reply, Exh. B, pp. 2, 4, 6.

Prior to the close of discovery, no Defendant disclosed or listed in a privilege log the December 11, 2009 letter from Attorney Kopack or the December 14, 2009 letter from Attorney Maddox, and no Defendant produced any of the three consultant reports forwarded by Attorney Maddox on December 14, 2009.

On July 28, 2011, Edgewater employees searched their files maintained by Edgewater in its regular course of business for documents responsive to Plaintiffs requests. During that process, Tim Thomas took over the responsibility of answering discovery for Edgewater from Mr. Sheth. Counsel for Edgewater requested that Mr. Thomas review the drafted responses and gather responsive documents.

On February 2, 2012, Plaintiff served her first set of discovery on Edgewater employees Mario Robbins, M.D. and Michelle Harris and served a second set of discovery on all Defendants. After gathering information from these Defendants, counsel for Edgewater drafted responses that were provided to Dr. Robbins and Ms. Harris for review.

On July 5, 2012, Plaintiff verbally requested the last known contact information of a previous employee, Odadele Adseiyan. Mr. Thomas provided this information to counsel for Edgewater, who in turn provided it to Plaintiff's counsel on July 13, 2012.

6

The deposition of Mr. Thomas, Vice President of Clinical Services, was taken on July 18, 2012. On July 19, 2012, based upon discussions during Mr. Thomas' deposition, Plaintiff sent an email correspondence to counsel for Edgewater, requesting production of various items Plaintiff believed were responsive to her discovery requests. Counsel for Edgewater forwarded the list to Mr. Thomas and asked that the documents be provided.

On September 4, 2012, Plaintiff's counsel sent correspondence to counsel for Edgewater, denoting discovery issues that she believed should be addressed prior to the close of discovery. Counsel for Edgewater represents that, both prior to that date and subsequent to the correspondence, counsel worked with the Edgewater Defendants to supplement discovery responses that had been previously provided.

Approximately six weeks prior to the close of discovery, which was set for October 15, 2012, Plaintiff's counsel requested that counsel for the Edgewater Defendants ensure that all records had been produced. Counsel for Edgewater corresponded with Edgewater on September 5 and 11, 2012. Mr. Thomas informed counsel that he was leaving Edgewater and that all requests should be directed to two other individuals. Counsel for Edgewater then directed his request to those two individuals.

Fact discovery closed on October 15, 2012. Nine days later, Defendant Edgewater turned over to Plaintiff one of the three consultant reports that had been produced by Attorney Maddox to Attorney Kopack on December 14, 2009, entitled "Report on Mental Health Care at Lake County Jail," which was a 50-page report, dated April 16, 2009, that presented a detailed assessment of the health care system at the Jail. The report provides that the author's "primary responsibility as consultant to the Department of Justice was to review the quality and appropriateness of mental

7

health care provided to the detainees and inmates assigned to Lake County Jail." Pl. Br., Exh. A, p. 4.

In the cover letter to Plaintiff's counsel accompanying Edgewater's disclosure of the report, counsel for Edgewater gave no explanation as to why Edgewater had not produced the report during discovery. Counsel for Edgewater stated that she produced the reports when her client "located" the documents and that "[i]t is uncertain when these documents were received or who received them. Pl. Br., Exh. D.

On October 25, 2012, counsel for Plaintiff contacted counsel for all Defendants to determine why they had not disclosed the consultant report during fact discovery. Plaintiff's counsel also asked all Defendants to immediately produce any other reports in their possession relating to the Department of Justice's investigation of the Jail. In the letter, Plaintiff's counsel notes that there were reports written by two other DOJ consultants–Robert Griefinger, M.D. and Leonard Rice–who had also visited and evaluated the Jail in December 2008 and whose reports had also not been produced by Defendants.

Five days later, Edgewater produced the two other consultant reports, entitled "Report on Lake County Correctional Facility" and "Report of Environmental Health & Safety Findings at the Lake County Jail."

On October 29, 2012, counsel for the Edgewater Defendants wrote to counsel for Plaintiff and explained that, when he asked Mr. Thomas' replacements in the discovery process to search again for information concerning the Jail, they did so and sent him the consultant reports that were then produced. Counsel for Edgewater reviewed the documents, drafted discovery responses, and produced the documents. Counsel for Edgewater further represented,

8

> The only individuals that Edgewater knows have seen these documents are those that located them. It is uncertain when these documents were received or who received them. Dr. Hughes confirmed to me that she has no recollection of seeing these reports prior to this point and that the most anyone at Edgewater could do is speculate as to when they were received and by whom. Since I did not have any specific information concerning the documents, I was unable to provide you with anything other than the documents themselves.

Pl. Br., Exh. D, p. 2. Counsel for Edgewater further noted to counsel for Plaintiff that Plaintiff was

> well aware of the DOJ inspection and report issued in December 2009 since the inception of the case. Multiple paragraphs in your complaint recite allegations from the report. The findings put forth in the reports recently produced by my office were included in the DOJ's comprehensive report, which you cited in your complaints. I would assume that such reports would also have been obtained by your office through a simple FOIA request to the DOJ.

*Id.*

From October 25, 2012, the date that counsel for Plaintiff contacted counsel for Defendants, to the date of Plaintiff's motion on November 21, 2012, none of the counsel for Defendants Dominguez (the Lake County Sheriff who met with the DOJ and its consultants in December 2008 and who operated the jail until December 31, 2010), Freeman (the warden of Lake County Jail who met with the DOJ and its consultants in December 2008 and who oversaw the day-to-day operations at the jail until mid-2010), and McQuillin (an assistant to the warden who met with the DOJ and its consultants in December 2008 and who held the position until the end of 2010), answered Plaintiff's counsel's request for information as to why these Defendants never disclosed the three consultant reports.

9

# ANALYSIS

In the instant motion, Plaintiff asks the Court to impose sanctions on the entity Defendants Sheriff John Buncich in his official capacity, Edgewater, and Med-Staff[2] for allegedly withholding the three consultant reports upon which the Department of Justice's December 7, 2009 report was based. In her opening brief, Plaintiff cites the Court's inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process," *Abner v. Kendall v. Scott Mem'l Hosp.*, 634 F.3d 962, 964 (7th Cir. 2011),[3] and Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(iv) for the sanctions available for "discovery misconduct." Pl. Br., p. 7. In her reply brief, Plaintiff clarifies that she is seeking sanctions under Federal Rule of Civil Procedure 37(c), which allows for the imposition of the sanctions listed in Rule 37(b)(2)(A)(i)-(iv) for a failure to disclose or supplement under Federal Rules of Civil Procedure 26(a) or (e). Having first learned from Defendants' response briefs of the December 11, 2009 letter from Attorney Kopack and the December 14, 2009 letter from Attorney Maddox, Plaintiff also argues in her reply brief for sanctions based on the failure to disclose those two letters during discovery.

Discovery "sanctions may only be imposed where a party displays wilfulness, bad faith, or fault." *Am. Nat'l Bank and Tr. Co. v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 878 (7th Cir. 2005) (citing *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997); *see also Citizens Ins. Co. of the Midwest v. LG Elecs., USA, Inc.*, No. 3:11-cv-40, 2012 WL 3614044, *2 (S.D. Ind. Aug. 21, 2012) (citing *Am. Nat'l Bank*, 406 F.3d at 877). The Seventh Circuit Court of Appeals has defined "fault" to mean "objective unreasonableness." *Citizens Ins. Co.*, 2012 WL 3614044, at *2

---

[2] In his response brief, Defendant Dr. William Pierce represents that Plaintiff's counsel advised counsel for Dr. Pierce that Plaintiff's motion was not brought against Dr. Pierce.

[3] In *Abner*, the Seventh Circuit Court of Appeals was considering sanctions for a violation of the type-volume limitation requirements of Federal Rule of Appellate Procedure 32(a)(7)(B). *See Abner v. Scott Mem'l Hosp.*, 634 F.3d 962, 963 (7th Cir. 2011).

(citing *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)). A district court has wide discretion to fashion appropriate sanctions under Rule 37, as long as the sanctions are reasonable under the circumstances. *Id.* at *3 (citing *Insight, Inc. v. Spamhaus Project*, 658 F.3d 637 (7th Cir. 2011)). Once the court makes a finding of willfulness, bad faith, or fault, "the sanction imposed must be proportionate to the circumstances." *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009).

The Court considers the actions of each Defendant in turn to determine whether they acted with willfulness, bad faith, or fault. First, the Court finds that there is no evidence that the Edgewater Defendants acted with willfulness, bad faith, or fault. The evidence supports the Edgewater Defendants' contention that their failure to disclose the documents in question earlier in this litigation was inadvertent and due to their lack of knowledge that the documents were in Edgewater's possession. The unfolding of the discovery process at Edgewater set forth above demonstrates that, each time Plaintiff asked for discovery, counsel for Edgewater asked the appropriate persons at Edgewater to search the Edgewater files and provide responsive documents. An employee of Edgewater states in an affidavit that the documents at issue were not found "in Edgewater's general files but were instead found in an office among a group of papers that had been left in the office by an ex-employee." Edgewater Resp., Exh. G. She further states, "These documents were not located previously as they were not contained in the files where Edgewater normally maintains such materials." *Id*., ¶ 10. There is no evidence that anyone at Edgewater in a position to respond to Plaintiff's interrogatories knew of the consultant reports.

As for Med-Staff, which was the Jail's medical care contractor from 2007-2011 (and, thus, one of the subjects of the DOJ consultants' reports), the Court finds that there is no evidence of

12

record that Med-Staff acted with willfulness, bad faith, or fault because there is no evidence that Med-Staff possessed the three consultant reports or the cover letters during the discovery period or that anyone at Med-Staff had seen the consultant reports. Counsel for Med-Staff, Inc., related his understanding to counsel for Plaintiff that his client did not possess the three reports and had never seen the reports. Although Med-Staff references the December 14, 2012 letter from Attorney Maddox, it is not clear that Med-Staff possessed the letter prior to the filing of the instant motion: "Defendants have received a copy of a letter from the DOJ attorney, William G. Maddox. . . ." Med-Staff Br., p. 2, ¶ 5.

As for the Sheriff in his official capacity, the Court finds that the Sheriff acted with fault because it is objectively unreasonable for the Sherif to have failed to produce to Plaintiff the December 11, 2009 letter from Attorney Kopack and the December 14, 2009 letter from Attorney Maddox in response to Request to Produce No. 16 and to have failed to respond to Interrogatory No. 3 requesting the identification of responsive documents that have been destroyed.[4] The Sheriff, in his official capacity, attached both the December 11, 2009 letter and the December 14, 2009 letter to his response brief to the instant motion. Thus, the letters were still in the possession of the Sheriff, yet neither letter had been previously disclosed to Plaintiff in the course of discovery. Although the Sheriff argues that he could not have produced the three consultant reports because they had been destroyed, the very fact that he knew that the reports had been destroyed demonstrates that he should have identified them as such in response to Interrogatory No. 3. The Sheriff cannot

---

[4] In his response brief filed in his official capacity, Sheriff John Buncich asserts that he did not have knowledge that the consultants' reports existed and argues that the prior administration had destroyed the consultants' reports in accordance with the agreement with the DOJ after they had completed their review of the documents. However, John Buncich is not named individually; he is being sued in his official capacity as the Lake County Sheriff and, thus, is responsible for responding to discovery requests directed to the Sheriff's Department, including requests related to events that preceded his election.

argue that the three consultant reports or the correspondence requesting and producing the reports is not relevant because the Sheriff produced the December 7, 2009 DOJ final report, which is derived from the consultant reports, in response to Plaintiff's Document Request No. 26 which sought "[d]ocuments relating to any internal or external review or audit of the health care of detainees at Lake County Jail, with which Med-Staff had any involvement." Non-Entity Lake County Defs. Resp., pp. 6-7, Exh. 3, p. 23.

Finally, as for the Non-Entity Lake County Defendants, specifically Dominguez, Freeman, and McQuillin, Plaintiff argues in her opening brief that they would have at least reviewed the three reports. In fact, in support of their response brief, the Non-Entity Lake County Defendants admit that the reports "were reviewed by the Sheriff's staff then destroyed." Non-Entity Lake County Defs. Resp. Br., p. 9. In addition, these Defendants attach to their response brief both the December 11, 2009 letter from Attorney Kopack and the December 14, 2009 letter from Attorney Maddox, yet neither letter was produced to Plaintiff during discovery. As noted in the previous paragraph, the letters are responsive to certain requests for production served on the *entity* Defendants and the fact of the destruction of the three consultant reports is responsive to Interrogatory No. 3 served on the entity Defendants. However, Plaintiff has not identified in either her motion or reply any similar discovery requests directed at Defendants Dominguez, Freeman, or McQuillin in their individual capacities that they are alleged to have failed to supplement. Such discovery requests may exist, but Plaintiff has not identified them in this motion.

Regardless, even if certain Defendants had acted properly by producing to Plaintiff the December 11, 2009 and December 14, 2009 correspondence and by disclosing the destruction of the three consultant reports that were produced to the Sheriff by the DOJ in December 2009, the Court

14

finds that the Defendants' fault is outweighed by the Plaintiff's knowledge of the existence of the consultant's reports from early in the litigation and by her failure to act on that knowledge. Thus, sanctions are not warranted under the circumstances. Plaintiff's Amended Complaint and Second Amended Complaint both cite and recite portions of the December 7, 2009 DOJ final report, which is a public document. The final report itself first identifies the fact that the DOJ toured the Jail in December 2008 with its consultants in the fields of suicide prevention and mental health care, medical care, and environmental conditions. The final report also describes the role the consultants played in the investigation, the debriefing of the Jail staff, and in the formulation of the final report. Most importantly, the final report specifically references the DOJ's willingness to "send our consultants' evaluations under separate cover."

Thus, because Plaintiff was in possession of the final report, she was on notice of the existence of the underlying consultant reports and of the DOJ's offer to produce the consultant reports under separate recover. Nevertheless, Plaintiff did not specifically reference these reports in any of her discovery requests, and it appears that Plaintiff did not attempt to obtain these documents on her own. The assertion by Plaintiff in her motion that she only recently "learned" of the existence of the three consultant reports is not well taken. Accordingly, the Court denies the Motion for Sanctions.

The sanction requested by Plaintiff would not have been appropriate for the alleged discovery violations even if sanctions had been imposed. Plaintiff argues that the cure for the prejudice she has suffered for the Defendants' late disclosure of the three consultant reports is to prohibit the entity Defendants from arguing that they did not have notice of practices violating detainees' rights that Plaintiff is able to prove at summary judgment or at trial. However, the

15

December 7, 2009 DOJ final report was issued more than one month after Mr. Hobson died, and the three consultant reports were not produced to the Jail until December 14, 2009. Thus, the information contained in the consultant reports could not have put the Jail or any other Defendant on notice of any unconstitutional practices or deficient jail conditions prior to Mr. Hobson's death.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion for Sanctions [DE 187].

SO ORDERED this 16th day of January, 2013.

                                              s/ Paul R. Cherry
                                              MAGISTRATE JUDGE PAUL R. CHERRY
                                              UNITED STATES DISTRICT COURT

cc:     All counsel of record