# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

DOROTHY HOBSON, as personal )
representative and administrator for the )
Estate of Kenneth Hobson, )
    Plaintiff, )
      )
  v. )   CAUSE NO.: 2:10-CV-429-TLS-PRC
      )
ROY DOMINGUEZ, individually and in )
his official capacity as Sheriff of Lake )
County, Indiana, et al., )
    Defendants. )

## OPINION AND ORDER

This matter is before the Court on a Renewed Motion to Compel Disclosure of Second Autopsy and Motion to Compel Expert Response to Subpoena Duces Tecum [DE 215], filed by Defendants Manual Barragan, Denise Gross, Daryl Frey, Med-Staff, Inc., and Unknown Employees and Supervisors of Med-Staff, Inc. ("Med-Staff Defendants") on March 21, 2013. This matter was then stayed to allow the parties to pursue mediation. The stay was lifted on October 28, 2013, and following an extension of time, Plaintiff filed a response on December 31, 2013. The Med-Staff Defendants filed a reply on February 14, 2014.

### A. Motion to Compel Disclosure of Second Autopsy

Sixteen days after being taken to the Lake County Jail on misdemeanor charges, 43-year old Kenneth Hobson was found dead in his cell on November 2, 2009. Dr. Young M. Kim of the Lake County Coroner's Office performed an official autopsy on Kenneth Hobson's body less than twenty-four hours after his death on November 3, 2009, and recorded the findings in a comprehensive, detailed eight-page report (the "Coroner's Report"). The Lake County Coroner's Office also documented the postmortem examination of Kenneth Hobson's body in a series of forty-eight

photographs and conducted a battery of toxicology tests on fluids extracted from Kenneth Hobson's body at the time of the autopsy. All counsel of record in this case possess the Coroner's Report, the forty-eight photographs, and the toxicology report.

Due to the circumstances surrounding Kenneth Hobson's death, his mother–Plaintiff Dorothy Hobson–retained counsel to explore possible legal claims against the Jail and its staff, employed a pathologist, Dr. James Bryant, to conduct a "second-look" autopsy on November 4, 2009, and arranged for additional toxicology tests to be performed on blood samples collected on that date.

In Plaintiff's Rule 26(a)(1) initial disclosures, served in April 2011, counsel for Plaintiff inadvertently produced to Defendants a four-page report of the "second-look" autopsy and an accompanying 2-page toxicology screen. After becoming aware of the "second-look" autopsy in Defendants' possession, counsel for Defendants requested that Plaintiff produce all documents related to that second autopsy. In response, Plaintiff's counsel objected, advising that the second autopsy was performed by a non-testifying consulting expert and that the production of those pages in the initial disclosures was inadvertent. Plaintiff's counsel requested that the materials be returned. Defendants then filed a motion with the Court seeking to compel Plaintiff to disclose this "second-look" autopsy.

On September 5, 2012, the Court denied that motion, finding that Plaintiff hired Dr. Bryant in anticipation of litigation, that Plaintiff did not intend to use Dr. Bryant as a witness at trial, that Plaintiff's disclosure of the four pages of the second-look autopsy as well as two pages of a second comprehensive drug panel performed on the body was inadvertent, and that Plaintiff promptly requested the return of the documents upon realizing the error. The Court found that as a non-testifying expert retained by Plaintiff in anticipation of litigation, Dr. Bryant's report and opinions

were protected from disclosure under Federal Rule of Civil Procedure 26(b)(4)(D). The Court also found that Defendants had not made a showing, as required by Federal Rule of Civil Procedure 26(b)(b)(D)(ii), of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."

Defendants later learned, during the depositions of Plaintiff's retained testifying medical experts, Allon Friedman, M.D. and James Filkins, M.D., that these experts were provided with the second autopsy and second toxicology reports in the packet of materials provided to them by counsel for Plaintiff. Defendants contend that Plaintiff provided the "second-look" autopsy to Dr. Friedman and Dr. Filkins "to consider in evaluating the cause of Mr. Hobson's death and rendering their expert opinions." (Def. Br., p. 2). Neither expert listed the second autopsy or the toxicology report in his report under the section listing evidence reviewed. However, both experts testified at their depositions as having received and reviewed the second autopsy and second toxicology reports when asked by defense counsel.

In response to Defendants' deposition question, "Did you rely, in coming to any of your opinions in this case, on anything contained in the second autopsy?" Dr. Friedman responded, "No. My opinions were already formulated based on the medical records that – I saw nothing, no. The bottom line is no, it did not." (Pl. Resp., Exh. 9, p. 189). During his deposition, Dr. Filkins was asked whether he received the results of a second autopsy, to which he responded, "Yes. I do recall that there was a second-look autopsy that was done." (Docket entry 218, Exh. C, p. 82). When asked if he "reviewed" the results of the second autopsy, Dr. Filkins responded, "I looked it over. I didn't really rely on it in making any conclusions." *Id.*

Plaintiff's counsel contests Defendants' characterization of the purpose for which Dr. Friedman and Dr. Filkins were given the second autopsy and second toxicology reports and denies that her medical experts considered the second autopsy or toxicology reports in formulating their opinions. In Plaintiff's response brief, counsel explains:

> Regrettably, undersigned counsel made precisely the same mistake when sending materials to Plaintiff's experts Friedman and Filkins. The packets of materials that she sent to the doctors included the same original bates document that she originally provided to counsel for Defendants. Therefore, those materials included Dr. Bryant's privileged 4-page report of his "second-look" autopsy and the toxicology screen. When Plaintiffs' counsel realized her inadvertent and accidental transmission of the Bryant materials, she explained to Drs. Friedman and Filkins that those materials are not part of this case - pursuant to the Court's privilege ruling - and that they must play no part in their opinions in this matter. Indeed, the materials played no part in their expert opinions.

(Pl. Br. 4-5) (citations omitted). Counsel further explains that she "produced hundreds of pages of documents to the doctors, and while doing so regrettably made the same inadvertent tender of the second-look autopsy materials to her experts that she initially did to Defendants. Plaintiff simply produced the same bates ranges to Dr. Friedman and Dr. Filkins without remembering to remove the second-look autopsy." *Id*. at 6.

In support of her response brief, Plaintiff offers the Affidavits of Dr. Friedman and Dr. Filkins. Dr. Friedman states, "Plaintiff's counsel sent me hundreds of pages of documents in this case, and included in those documents was a report of a "second-look" autopsy performed of Kenneth Hobson's body by Dr. James Bryant, including a two-page toxicology report. These pages of materials did not include conclusions by Dr. Bryant as to the cause of death of Kenneth Hobson or any electrolyte screen ordered by him." (Docket entry 254). He goes on to explain that Plaintiff's counsel informed him that she had mistakenly provided Dr. Bryant's materials, that the Court had held that those materials are privileged, and that he was not to consider those materials in this case,

4

stating, "As a result, I did not consider, use, or rely on the Dr. Bryant materials in any way in forming my opinions in this matter, nor will I use or rely on those materials for any further work or testimony in this case."*Id*. Dr. Filkins Affidavit provides the same explanation for the production of the Dr. Bryant materials and Plaintiff's counsel's subsequent direction not to consider them, and he states, "As a result, I did not consider, use, or rely on the Dr. Bryant materials in any way in forming my opinions in this matter, nor will I use or rely on those materials for any further work or testimony in this case. This is why I did not include the Dr. Bryant materials in my Rule 26 report, as part of my list of materials that Ms. Liskow asked me to review for this matter." (Pl. Resp., Exh. 1, docket entry 245-1).

Federal Rule of Civil Procedure 26(a)(2)(B)(ii), addressing the disclosure of expert testimony, provides for the automatic disclosure in a written report, prepared and signed by the witness, of "the facts or data considered by the witness in forming" the expert witness's opinions. Federal Rule of Civil Procedure 26(b)(4)(C) protects communications between a party's attorney and an expert witness except to the extent the communications

> **(i)** relate to compensation for the expert's study or testimony;
> **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
> **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C). Pursuant to these Rules, Defendants seek the disclosure of Dr. Bryant's "second-look" autopsy, the toxicology report, and Dr. Bryant's opinions, arguing that because Plaintiff's experts reviewed the Dr. Bryant materials, even if they did not ultimately rely on them, the materials were considered by the experts in forming their opinions. Defendants claim prejudice because they were prevented by Plaintiff's counsel from questioning Dr. Friedman and Dr. Filkins

5

regarding the "second-look" autopsy and because their experts did not have the benefit of reviewing the same.

Plaintiff argues that Dr. Friedman and Dr. Filkins did not "consider" the "second-look" autopsy within the meaning of the Rule because they did not "take into account" the autopsy. *See Rhone-Poulenc, Inc. v. International Ins. Co.*, No. 94 C 3303, 1997 WL 264299, at *8 (N.D. Ill. May 8, 1997). Defendants counter that both experts testified that they reviewed the second autopsy and that both experts testified not that they did not rely on the second autopsy but rather that the second autopsy did not change their opinions. Thus, Defendants argue that the second autopsy is discoverable. In the companion Motion for Sanctions (docket entry 218), Defendants cite the 2010 Advisory Committee Notes to Rule 26, which explain that "[t]he disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." Fed. R. Civ. P. 26 (2010 Advisory Committee Notes); *see Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1286 (Fed. Cir. 2011) (quoting the 1993 Advisory Committee Note ("Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.")). The Seventh Circuit Court of Appeals has held, "A testifying expert must disclose and therefore retain whatever materials are given him to review in preparing his testimony, even if in the end he does not rely on them in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination." *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412

6

F.3d 745, 751 (7th Cir. 2005) (citing Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a)(2); *Karn v. Ingersoll–Rand Co.,* 168 F.R.D. 633 (N.D. Ind. 1996)).

In this case, Plaintiff has proposed a resolution to this dispute, and the Med-Staff Defendants have identified additional discovery to remedy the prejudice resulting from Plaintiff's non-disclosure. The Med-Staff Defendants represent that Plaintiff has offered to disclose the full "second-look" autopsy and to authorize Defendants' experts to review it and to supplement their opinions. Plaintiff has also offered to cover the cost of a second deposition of Dr. Friedman and Dr. Filkins, if so requested by Defendants. The Med-Staff Defendants accept these offers to address the discovery dispute itself. However, Defendants contend that the offers do not remedy the prejudice that has resulted from the non-disclosure, namely that Defendants will not have an opportunity to have assessed the "second-look" autopsy before discovery closed last year and that Defendants may have disclosed the identify and opinions of testifying experts if they had had the benefit of the "second-look" autopsy. Defendants argue that they should be given the opportunity to reassess the evidence, consult with experts, and potentially disclose additional expert opinions necessary to address this evidence and the evidence as a whole as it has changed through the discovery and expert discovery process. Defendants propose a 120-day period in which to conduct this additional fact and expert discovery.

Based on the parties' proposals, the Court grants the Motion to Compel, orders that Plaintiff shall produce to all Defendants Dr. Bryant's full "second-look" autopsy report, the toxicology reports, and Dr. Bryant's opinions; fact and expert discovery are reopened for all parties solely as related to the production of Dr. Bryant's "second-look" autopsy report, toxicology report, and opinions; Defendants are granted leave to re-depose Plaintiff's retained experts Dr. Friedman and

Dr. Filkins regarding the second autopsy materials, and Plaintiff shall pay the cost to re-depose Dr. Friedman and Dr. Filkins; Defendants' pathology expert, Dr. Pless, is granted leave to provide an amended report based on the "second-look" autopsy performed by Dr. Bryant, the toxicology report, and Dr. Bryant's opinions; Defendants are granted leave to retain alternate or additional defense experts based on the second autopsy and its related discovery; and Defendants are granted leave to depose Dr. Bryant.[1]

Federal Rule of Civil Procedure 37(a)(5) provides that, if the motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Fees may not be awarded if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action," "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust." *Id*. 37(a)(5)(A)(i)-(iii). The Court finds that none of the exceptions apply and orders that Plaintiff's attorney shall pay the Med-Staff Defendants' reasonable expenses incurred in making this motion.

**B. Motion to Compel Expert Response to Subpoena Duces Tecum**

Plaintiff disclosed four experts in this case. The Med-Staff Defendants scheduled the deposition of three of the experts, and Defendant Edgewater scheduled the deposition of a fourth. Defendants served a subpoena duces tecum under Federal Rule of Civil Procedure 45 on Plaintiff's experts, requesting that the experts produce all documents and evidence relied upon by them in

---

[1] In light of the parties' proposals to resolve the substantive discovery dispute, the Court declines to address Plaintiff's argument that the Motion to Compel was untimely.

coming to their expert opinions. Plaintiff's counsel objected at the time the subpoenas were served

on the basis that the experts' reports list all documents relied upon by them and that those documents

have all been produced previously in discovery by Plaintiff. Defendants cite no law in support of

this motion.

Plaintiff has made disclosures pursuant to Federal Rules of Civil Procedure 26(a)(2)(B) and

26(b)(4)(C). Rule 26(a)(2)(B) provides:

> **(B)** *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or
> ordered by the court, this disclosure must be accompanied by a written report--
> prepared and signed by the witness--if the witness is one retained or specially
> employed to provide expert testimony in the case or one whose duties as the party's
> employee regularly involve giving expert testimony. The report must contain:
>> **(i)** a complete statement of all opinions the witness will express and the basis
>> and reasons for them;
>> **(ii)** the facts or data considered by the witness in forming them;
>> **(iii)** any exhibits that will be used to summarize or support them;
>> **(iv)** the witness's qualifications, including a list of all publications authored
>> in the previous 10 years;
>> **(v)** a list of all other cases in which, during the previous 4 years, the witness
>> testified as an expert at trial or by deposition; and
>> **(vi)** a statement of the compensation to be paid for the study and testimony
>> in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Rule 26(b)(4)(C) provides:

> **(C)** *Trial-Preparation Protection for Communications Between a Party's Attorney
> and Expert Witnesses*. Rules 26(b)(3)(A) and (B) protect communications between
> the party's attorney and any witness required to provide a report under Rule
> 26(a)(2)(B), regardless of the form of the communications, except to the extent that
> the communications:
>> **(i)** relate to compensation for the expert's study or testimony;
>> **(ii)** identify facts or data that the party's attorney provided and that the expert
>> considered in forming the opinions to be expressed; or
>> **(iii)** identify assumptions that the party's attorney provided and that the
>> expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C).

To the extent that Defendants are seeking the production of the second autopsy and toxicology report, the Court has already ordered that Plaintiff produce both pursuant to the ruling on the Motion to Compel above. To the extent that Defendants state that "[t]here were other facts and data provided but unlisted by the experts, including deposition testimony and other expert reports," Defendants do not specifically identify any such evidence. Plaintiff's response brief explains that the additional testimony and reports were reviewed by Plaintiff's experts after they issued their reports but before their depositions, and that all of those materials have either been produced to Defendants or are in Defendants' possession. Plaintiff again asserts that Defendants are already in possession of all this evidence. Defendants offer no reply in support of this motion and, therefore, do not contest Plaintiff's position that all documents and evidence relied upon by the experts have been produced. Nor do defendants identify other materials not disclosed through the regular expert discovery process that may properly be the subject of a Rule 45 subpoena. *See Crawford v. Biolife Plasma Servs. LP*, 2:10 CV 24, 2011 WL 2183874, at *3 (N.D. Ind. June 3, 2011); *Expeditors Int'l of Washington, Inc. v. Vastera, Inc.*, 04 C 0321, 2004 WL 406999, at *3-4 (N.D. Ill. Feb. 26, 2004); *see also Artistic Carton Co. v. Thelamco, Inc.*, 1:06-CV-316, 2008 WL 2622806, at *3-4 (N.D. Ind. June 30, 2008).

Accordingly, the Court denies the Motion to Compel Expert Response to Subpoena Duces Tecum.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Renewed Motion to Compel Disclosure of Second Autopsy [DE 151-1] and **DENIES** the Motion to Compel Expert Response to Subpoena Duces Tecum [DE 151-2].

10

Having granted the Motion to Compel, the Court hereby **ORDERS** that

(1)     Plaintiff shall disclose to all Defendants Dr. Bryant's "second-look" autopsy report, the toxicology report, and Dr. Bryant's opinions on or before **March 6, 2014**;

(2)     Fact and expert discovery are reopened for all parties solely as related to the production of Dr. Bryant's "second-look" autopsy report, toxicology report, and opinions;

(3)     Defendants are granted leave to re-depose Plaintiff's retained experts Dr. Friedman and Dr. Filkins regarding the second autopsy materials, and Plaintiff shall pay the cost to re-depose Dr. Friedman and Dr. Filkins;

(4)     Defendants' pathology expert, Dr. Pless, is granted leave to provide an amended report based on the "second-look" autopsy performed by Dr. Bryant, the toxicology report, and Dr. Bryant's opinions;

(5)     Defendants are granted leave to retain alternate or additional defense experts based on the second autopsy and its related discovery; and

(6)     Defendants are granted leave to depose Dr. Bryant.

The Court further **ORDERS** that the deadline to complete the fact and expert discovery allowed herein is **June 27, 2014**. Given the time this case has been pending, any request to extend this deadline will be viewed with disfavor.

The Court **ORDERS** the parties to engage in a telephonic scheduling conference among themselves (without participation of the Court) no later than **March 13, 2014**, to determine the order in which this additional fact and expert discovery will take place, including, but not limited to: a deadline to complete additional fact discovery; a deadline for Plaintiff to disclose amended expert reports, if any; a deadline for Defendants to re-depose Plaintiff's experts; a deadline to depose Dr. Bryant; a deadline for Defendants to disclose Dr. Pless's amended report, if any; a deadline for Defendants to disclose alternate or additional defense experts, if any; and a deadline for Plaintiff to depose Defendants' experts. The Court **ORDERS** the parties, after they have conferred, to file an

11

agreed motion on or before **March 18, 2014**, requesting that the Court issue an order setting the agreed-upon deadlines.

The Court **ORDERS** Plaintiff's attorney to pay the Med-Staff Defendants' reasonable expenses incurred in making this motion and **ORDERS** the Med-Staff Defendants to **FILE** an affidavit setting forth their reasonable expenses, including attorney fees, with supporting documentation on or before **March 14, 2014**.

SO ORDERED this 28th day of February, 2014.

 s/ Paul R. Cherry

MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:      All counsel of record

12