UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DOROTHY HOBSON, as personal representative and administrator for the Estate of Kenneth Hobson, <br>     Plaintiff, <br><br>     v. <br><br> ROY DOMINGUEZ, individually and in his official capacity as Sheriff of Lake County, Indiana, et al., <br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CAUSE NO.: 2:10-CV-429-TLS-PRC |

### FINDINGS, REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE PURSUANT TO
### 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on Defendants' Motion for Sanctions Under Federal Rule of Civil Procedure 37 [DE 217], filed by all Defendants on March 29, 2013. This matter was then stayed to allow the parties time to pursue mediation. The stay was lifted on October 28, 2013, and following an extension of time, Plaintiff filed a response on December 31, 2013. All Defendants with the exception of the Edgwater Defendants filed a reply on February 21, 2014.

On February 26, 2014, District Court Judge Theresa L. Springmann entered an Order [DE 263], referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

For the following reasons, the Court recommends that Judge Springmann grant in part and deny in part the relief requested in Defendants' Motion for Sanctions Under Federal Rule of Civil Procedure 37 [DE 217].

## PROCEDURAL AND FACTUAL BACKGROUND

Sixteen days after being taken to the Lake County Jail on misdemeanor charges, 43-year old Kenneth Hobson was found dead in his cell on November 2, 2009. Dr. Young M. Kim of the Lake County Coroner's Office performed an official autopsy on Kenneth Hobson's body less than twenty-four hours after his death on November 3, 2009, and recorded the findings in a comprehensive, detailed eight-page report (the "Coroner's Report"). The Lake County Coroner's Office also documented the postmortem examination of Kenneth Hobson's body in a series of forty-eight photographs and conducted a battery of toxicology tests on fluids extracted from Kenneth Hobson's body at the time of the autopsy. All counsel of record in this case possess the Coroner's Report, the forty-eight photographs, and the toxicology report.

Due to the circumstances surrounding Kenneth Hobson's death, his mother–Plaintiff Dorothy Hobson–retained counsel to explore possible legal claims against the Jail and its staff, employed a pathologist, Dr. James Bryant, to conduct a "second-look" autopsy on November 4, 2009, and arranged for additional toxicology tests to be performed on blood samples collected on that date.

In Plaintiff's Rule 26(a)(1) initial disclosures, served in April 2011, counsel for Plaintiff inadvertently produced to Defendants a four-page report of Dr. Bryant's "second-look" autopsy and an accompanying 2-page toxicology screen. After becoming aware of the "second-look" autopsy in their possession, in November 2011, counsel for Defendants requested that Plaintiff produce all documents related to the "second-look" autopsy. In response, Plaintiff's counsel objected, advising that the second autopsy was performed by a non-testifying consulting expert and that the production of those pages in the initial disclosures was inadvertent. Plaintiff's counsel requested that the

materials be returned. Defendants then filed a motion with the Court seeking to compel Plaintiff to disclose this "second-look" autopsy.

On September 5, 2012, the Court denied that motion, finding that Plaintiff hired Dr. Bryant in anticipation of litigation, that Plaintiff did not intend to use Dr. Bryant as a witness at trial, that Plaintiff's disclosure of the four pages of the second-look autopsy and the two pages of the toxicology report was inadvertent, and that Plaintiff promptly requested the return of the documents upon realizing the error. The Court found that, as a non-testifying expert retained by Plaintiff in anticipation of litigation, Dr. Bryant's report and opinions were protected from disclosure under Federal Rule of Civil Procedure 26(b)(4)(D). The Court also found that Defendants had not made a showing, as required by Federal Rule of Civil Procedure 26(b)(b)(D)(ii), of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."

During discovery, Defendant Edgewater Systems for Balanced Living served written discovery on Plaintiff in June 2011, including requests for documents that requested "[a]ny and all documents sent to any expert who will be called to testify at trial in this matter," "[a]ny and all documents sent from any expert who will be called to testify at trial in this matter to you or to your counsel," and "[t]he complete file of any expert who will be called to testify at trial in this matter." (Def. Br., Exh. A). Plaintiff made her expert disclosures, including the reports, curriculum vitae, and fee schedules of her experts.

However, in early March 2013, during the depositions of Plaintiff's retained testifying medical experts, Allon Friedman, M.D. and James Filkins, M.D., Defendants learned that these experts had been provided with Dr. Bryant's "second-look" autopsy and second toxicology reports

3

in the packet of materials provided to them by Plaintiff's counsel. Dr. Friedman was asked whether he was aware that a second autopsy had been performed and he responded, "I was aware of that." (Def. Br., Exh. B., p. 84). He answered that he had seen the results of the second autopsy. *Id*. Dr. Friedman testified that he may have received the second autopsy in approximately October 2012. During his deposition, on several occasions, Plaintiff's counsel instructed Dr. Friedman not to answer questions inquiring about communications between counsel and the retained expert. Counsel for Plaintiff stated, "I made my objection that, Doctor, if your answer has anything to do with communications between counsel for the plaintiffs and yourself, then based on my previous instructions, I'm instructing you not to answer." (Def. Br., Exh. B., p. 104-107).

During Dr. Filkins's deposition, he also revealed that he had been provided with pages of the "second-look" autopsy report by Plaintiff's counsel, which he did not list in his expert report as having reviewed. When Dr. Filkins was asked about the second autopsy, counsel for Plaintiff instructed him not to answer because, "[t]he judge has ruled in this case that the content of that autopsy is protected."

Subsequently, on March 21, 2013, the Med-Staff Defendants in this case filed a Motion to Compel Disclosure of the Second Autopsy. On March 29, 2013, all Defendants filed the instant Motion for Sanctions.

On April 9, 2013, Plaintiff's counsel and Defendants' counsel held a conference call to attempt to resolve the dispute. While maintaining that Dr. Bryant's autopsy materials were privileged, but in the interest of resolving the dispute, Plaintiff's counsel offered to disclose to Defendants the "second-look" autopsy report, the toxicology report, and Dr. Bryant's opinions. Plaintiff's counsel further offered that if Defendants wished to re-depose Dr. Friedman and Dr.

Filkins regarding the Bryant materials, Plaintiff's counsel would not object. After negotiations, Plaintiff's counsel offered to pay for the expense of re-deposing her experts. Plaintiff's counsel also agreed to Defendants providing an amended report of Dr. Pless, their pathologist expert, if they felt it was appropriate. The conference was terminated with the understanding that the offer would be considered by Defendants. Shortly thereafter, Defendants communicated to Plaintiff's counsel that they would like to engage in mediation. As noted above, the Court granted a stay of proceedings, including the briefing of the Motion to Compel and the instant Motion for Sanctions to allow for mediation. The mediation was ultimately unsuccessful, and the stay was lifted.

In response to the Motion to Compel, Plaintiff contested Defendants' characterization of the purpose for which Dr. Friedman and Dr. Filkins were given the second autopsy and second toxicology reports by her counsel and denied that her medical experts "considered" the second autopsy or toxicology reports in formulating their opinions. In the response brief, counsel explained:

> Regrettably, undersigned counsel made precisely the same mistake when sending materials to Plaintiff's experts Friedman and Filkins. The packets of materials that she sent to the doctors included the same original bates document that she originally provided to counsel for Defendants. Therefore, those materials included Dr. Bryant's privileged 4-page report of his "second-look" autopsy and the toxicology screen. When Plaintiff's counsel realized her inadvertent and accidental transmission of the Bryant materials, she explained to Drs. Friedman and Filkins that those materials are not part of this case - pursuant to the Court's privilege ruling - and that they must play no part in their opinions in this matter. Indeed, the materials played no part in their expert opinions.

(Pl. Br. 4-5) (citations omitted). Counsel further explained that she "produced hundreds of pages of documents to the doctors, and while doing so regrettably made the same inadvertent tender of the second-look autopsy materials to her experts that she initially did to Defendants. Plaintiff simply produced the same bates ranges to Dr. Friedman and Dr. Filkins without remembering to remove the second-look autopsy." *Id*. at 6.

In the Motion to Compel, Defendants sought to compel the Dr. Bryant materials on the basis that Plaintiff's medical experts had in fact reviewed the materials in making their expert opinions, even if they did not ultimately rely on them. Plaintiff maintained that she was not required to disclose the Bryant materials because the experts did not rely on the materials. In support of her response brief, Plaintiff submitted the Affidavits of both doctors in which they both stated: "I did not consider, use, or rely on the Dr. Bryant materials in any way in forming my opinions in this matter, nor will I use or rely on those materials for any further work or testimony in this case."

This same date, the Court issued an Opinion granting the Med-Staff Defendants' Motion to Compel on the basis that, in their reply brief in support of the Motion to Compel, the Med-Staff Defendants had accepted Plaintiff's proposal and made additional proposals for reopening fact and expert discovery related to the Dr. Bryant materials that the Court found reasonable under the circumstances. The Court ordered that Plaintiff is to produce to all Defendants Dr. Bryant's second autopsy report, the toxicology reports, and Dr. Bryant's opinions; that fact and expert discovery are reopened for all parties solely as related to the production of Dr. Bryant's "second-look" autopsy report, toxicology report, and opinions; that Defendants are granted leave to re-depose Plaintiff's retained experts Dr. Friedman and Dr. Filkins regarding the second autopsy materials, and Plaintiff shall pay the cost to re-depose Dr. Friedman and Dr. Filkins; that Defendants' pathology expert, Dr. Pless, is granted leave to provide an amended report based on the "second-look" autopsy performed by Dr. Bryant, the toxicology report, and Dr. Bryant's opinions; that Defendants are granted leave to retain alternate or additional defense experts based on the second autopsy and its related discovery; and that Defendants are granted leave to depose Dr. Bryant. The Court ordered that

Plaintiff's attorney pay the Med-Staff Defendants' reasonable expenses incurred in bringing the Motion to Compel.

## ANALYSIS

In the instant Motion for Sanctions, Defendants argue that Plaintiff has violated the expert discovery rules by "concealing and withholding discoverable material" and by "improperly obstructing the depositions of [Plaintiff's] experts, Dr. Allon Friedman and Dr. James Filkins." (Def Mot., 2). Under Federal Rule of Civil Procedure 37, Defendants seek the sanction of dismissal or, at a minimum, a sanction barring Plaintiff from presenting Dr. Friedman and Dr. Filkin's reports and testimony as evidence.

Federal Rule of Civil Procedure 37(c) allows for the imposition of sanctions under Rule 37(b)(2)(A)(i)-(vi) for a failure to disclose or supplement under Rules 26(a) or (e). Discovery "sanctions may only be imposed where a party displays wilfulness, bad faith, or fault." *Am. Nat'l Bank and Tr. Co. v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 878 (7th Cir. 2005) (citing *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997)); *see also Citizens Ins. Co. of the Midwest v. LG Elecs., USA, Inc.*, No. 3:11-cv-40, 2012 WL 3614044, *2 (S.D. Ind. Aug. 21, 2012) (citing *Am. Nat'l Bank*, 406 F.3d at 877). The Seventh Circuit Court of Appeals has defined "fault" to mean "objective unreasonableness." *Citizens Ins. Co.*, 2012 WL 3614044, at *2 (citing *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)). A district court has wide discretion to fashion appropriate sanctions under Rule 37, as long as the sanctions are reasonable under the circumstances. *Id*. at *3 (citing *Insight, Inc. v. Spamhaus Project*, 658 F.3d 637 (7th Cir. 2011)). Once the court makes a finding of willfulness, bad faith, or fault, "the sanction imposed must be proportionate to the circumstances." *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009).

Defendants also invoke the Court's inherent authority to sanction a party. *See Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir.1993) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

First, Defendants argue that sanctions are warranted by Plaintiff's withholding of the "second-look" autopsy and related documents when Plaintiff's testifying experts considered the facts and data therein in forming their expert opinions. Defendants learned during the depositions of Dr. Friedman and Dr. Filkins that counsel for Plaintiff had provided the experts with four pages of the "second-look" autopsy and two pages of the toxicology report but that Plaintiff's counsel had later instructed the experts not to consider those materials.

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. Rule 26(a)(2)(B) requires the disclosure of a written report prepared and signed by the expert witness and must include "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i) and (ii). With the 2010 amendments to Rule 26, the Advisory Committee explained that the phrase "facts or data" was intended to "limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel." Fed. R. Civ. P. 26 (2010 advisory committee notes).

At the same time, the Advisory Committee explained that the phrase "facts or data" was intended to "be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." *Id.* The Committee went on to explain that "[t]he disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id.* "Given this obligation of

8

disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1286 (Fed. Cir. 2011) (quoting the 1993 Advisory Committee Note)).

The Seventh Circuit Court of Appeals has held, "A testifying expert must disclose and therefore retain whatever materials are given him to review in preparing his testimony, even if in the end he does not rely on them in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination." *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) (citing Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a)(2); *Karn v. Ingersoll–Rand Co.*, 168 F.R.D. 633 (N.D. Ind. 1996)). In this case, Dr. Friedman and Dr. Filkins were "given," albeit inadvertently, portions of the "second-look" autopsy materials and then were instructed not to consider them. Both experts testified that they had "reviewed" pages of the "second-look" autopsy.

The Court finds that, once counsel for Plaintiff learned that Dr. Friedman and Dr. Filkins had seen the "second-look" autopsy materials, Plaintiff should have disclosed the fact to Defendants. The second autopsy constitutes "facts and data" that the experts were given and that they reviewed. The "second-look" autopsy is on the very subject matter these experts were giving an opinion. The integrity of the expert discovery process is undermined if a party's expert can review materials, decide either as part of the expert's analysis or at counsel's direction not to rely on those materials, and then prevent inquiry into the matters by an opposing party by unilaterally declaring that the facts and data were not relied on in formulating the expert's opinion. In this case, Defendants had no

9

opportunity to examine Dr. Friedman and Dr. Filkins about the second autopsy and how they were able to not consider it in rendering their opinions. Although this Court had previously ruled that Dr. Bryant's "second-look" autopsy was privileged under Rule 26(b)(4)(D) when it had been inadvertently disclosed to Defendants, the Court had not considered the question of disclosure of the autopsy to retained, testifying experts governed by Rule 26(a)(2)(B).

Plaintiff waived that privilege when she produced the documents to her testifying experts who then reviewed the documents before being directed not to consider them. *See Fialkowski v. Perry*, CIV.A. 11-5139, 2012 WL 2527020, at *4 (E.D. Pa. June 29, 2012) ("Courts have held that the disclosure requirements of Rule 26(a)(2)(B) 'were meant to trump all claims of privilege, mandating production of all information furnished to the testifying expert for consideration in the formulation of [the expert's] opinions, regardless of privilege.'" (quoting *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005)). Although the disclosure of the "second-look" autopsy documents was inadvertent, rather than deliberate, it appears that Plaintiff inadvertently provided them to the experts not only after Plaintiff learned of the inadvertent disclosure to Defendants in her initial disclosures but also after the Court ruled that the documents were privileged based on Plaintiff's representations to the Court about their use. The Court is compelled by the fact that the experts reviewed the "second-look" autopsy documents before being told to disregard them.

Defendants also contend that Dr. Friedman relied on documents, other than the "second-look" autopsy documents, that he reviewed after issuing his report but prior to his deposition that were neither included in any Rule 26(a) disclosures nor in any Rule 26(e) supplemental disclosure by Plaintiff. The documents were Dr. Kim's deposition testimony, Dr. Pless's report (Defendants'

expert); Dr. Dinwiddie's report (Defendants' expert); and the depositions of Dr. Anthony and Dr. Robbins, doctors who worked at the Lake County Jail and are named defendants. With the exception of Dr. Kim's deposition, which Plaintiff's counsel identified for Defendants in advance of Dr. Friedman's deposition as having been reviewed by Dr. Friedman, Plaintiff should have included Dr. Friedman's review of these reports on a supplemental report under Rule 26(e) in advance of Dr. Friedman's deposition.

Second, Defendants argue that sanctions are warranted because Plaintiff's counsel improperly prevented Dr. Friedman and Dr. Filkins from answering legitimate questions posed to them during their depositions. Defendants contend that during the deposition of Dr. Friedman, Plaintiff's counsel improperly prevented him from answering properly posed questions regarding whether Dr. Friedman asked for specific records to review, how Dr. Friedman was contacted to review the case, whether Dr. Friedman reviewed documents generated by Plaintiff's counsel, and the number of emails that were exchanged between Plaintiff's counsel and Dr. Friedman.

Federal Rule of Civil Procedure 26(b)(4)(C) protects communications between a party's attorney and the party's expert witness with three exceptions, namely that

> **(C)** *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses*. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
> **(i)** relate to compensation for the expert's study or testimony;
> **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
> **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C). Defendants rely on the last two exceptions in this case. Having reviewed the deposition questions specifically identified by Defendants in their motion, the Court finds that the only questions that fall under these exceptions are those related to the "second-look" autopsy. Because the autopsy was no longer privileged once it was reviewed by the experts and because it should have been disclosed as having been reviewed by the experts, any communications by Plaintiff's counsel identifying the "facts and data" related to the "second-look" autopsy are discoverable. However, Plaintiff's counsel's objections are understandable given Plaintiff's position that the privilege had not been waived.

Defendants also cite Dr. Friedman's deposition when he testified that he was told that he should not focus on Dr. Pless's deposition. (Def. Br. 14; Exh. B., p. 104-106). It appears from the deposition text itself and is confirmed by Dr. Friedman's Affidavit that Dr. Friedman confused Dr. Pless with Dr. Bryant at that point in his deposition and that Dr. Friedman was never directed not to consider Dr. Pless's opinion.

The Court now turns to Defendants' requested sanctions. Defendants' request for the sanction of dismissal with prejudice is extreme and unwarranted in this case. The prejudice Defendants claim can be cured by Plaintiff's disclosure of the "second-look" autopsy documents and the reopening of limited fact and expert discovery related to the "second-look" autopsy, which the Court has already ordered in ruling on the Motion to Compel. Having reviewed the Rules of Professional Conduct that Defendants allege to have been violated by Plaintiff's counsel, the Court finds that counsel's actions do not rise to the level of abuse asserted by Defendants.

Similarly, Defendants' requested sanction that the Court prohibit Plaintiff from introducing the testimony and reports of Dr. Friedman and Dr. Filkins into evidence is inappropriate. There is

no evidence that Plaintiff's counsel acted with bad faith or willfulness, and, as stated above, the prejudice to Defendants is being cured through the disclosure of the "second-look" autopsy and the reopening of discovery. Moreover, Dr. Friedman and Dr. Filkins reviewed hundreds of pages of evidence, of which the "second-look" autopsy was only six pages. There is no basis for Defendants' accusation on page 19 of their brief that it is possible that there are still undisclosed factual materials that Dr. Friedman and Dr. Filkins reviewed that have not been disclosed to Defendants.

Federal Rule of Civil Procedure 37(c), under which Defendants bring the instant motion, provides that, in addition to the option of imposing the sanctions listed in Rule 37(b)(2)(A)(i)-(vi) for a party's failure "to provide information or identify a witness as required by Rule 26(a) or (e)," the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). In their reply brief, Defendants recognize that Plaintiff's offers in April 2013 to disclose the "second-look" autopsy materials are acceptable to a certain extent but then argue that, even with Plaintiff's offers, Defendants continue to suffer prejudice that cannot be remedied because discovery is now closed. The Court's Opinion granting the Motion to Compel addresses each of Defendants' prejudice concerns set forth in their reply brief. Nevertheless, because Plaintiff displayed fault in not revealing to Defendants the fact of the disclosure of the "second-look" autopsy to her experts and then not disclosing the "second-look" autopsy documents and because portions of the instant Motion for Sanctions were considered by the Court in ruling on the related Motion to Compel, an order should issue requiring counsel for Plaintiff to pay Defendants' reasonable expenses, including attorney's fees, incurred in prosecuting this Motion for Sanctions.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Judge Springmann grant in part and deny in part Defendants' Motion for Sanctions Under Federal Rule of Civil Procedure 37 [DE 217], denying Defendants' request for the sanctions of dismissal or exclusion of Plaintiff's retained medical experts and granting an award of reasonable expenses, including attorney fees, incurred by Defendants in bringing this motion, to be paid by counsel for Plaintiff.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 28th day of February, 2014.

                              s/ Paul R. Cherry
                              MAGISTRATE JUDGE PAUL R. CHERRY
                              UNITED STATES DISTRICT COURT

cc:    All counsel of record